STATE of Wisconsin, Plaintiff-Respondent,

v.

Chad A. KLESSIG, Defendant-Appellant-Petitioner.

Supreme Court

*No. 95–1938–CR. Oral argument January 10, 1997.—Decided June 24, 1997.*

(Also reported in 564 N.W.2d 716.)

ABRAHAMSON, C.J., concurs.

For the defendant-appellant-petitioner there were briefs and oral argument by *Robert J. Miller,* Green Bay.

For the plaintiff-respondent the cause was argued by *Diane M. Nicks,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. JON P. WILCOX, J. This case is before the court on a petition for review filed by Chad A. Klessig. The petitioner seeks review of a published decision of the court of appeals, *State v. Klessig,* 199 Wis. 2d 397, 544 N.W.2d 605 (Ct. App. 1996), that affirmed his conviction. The trial was held in the Circuit Court for Brown County, Richard G. Greenwood, Judge. We reverse the decision of the court of appeals.

¶ 2. On review, there are two issues: (1) whether Klessig knowingly, intelligently and voluntarily waived his Sixth Amendment right to counsel, and (2) whether the circuit court should have made an inde-

pendent determination of Klessig's competency to represent himself. We hold that the record is insufficient to determine whether Klessig's waiver of counsel was knowing, intelligent and voluntary, and that the circuit court should have made an independent determination of Klessig's competence to represent himself. We thus reverse the decision of the court of appeals and remand for an evidentiary hearing to determine (1) whether Klessig knowingly, intelligently and voluntarily waived his right to counsel, (2) whether an adequate and meaningful nunc pro tunc inquiry can be conducted on the issue of whether Klessig was competent to represent himself, and (3) if such an inquiry can be conducted, whether Klessig was competent to proceed pro se.

## I.

¶ 3.   The relevant facts are not in dispute. Klessig was initially charged with one count of bail jumping contrary to Wis. Stat. § 946.49(1)(b) (1995–96)[1] and one count of being a party to the crime of burglary contrary to Wis. Stat. § 943.10(1)(a)[2] and Wis. Stat.

---

[1] Unless otherwise indicated, all future references to the Wisconsin Statutes are to the 1995–96 volume. Wis. Stat. § 946.49(1) provides in relevant part:

**946.49 Bail Jumping.**   (1) Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:

. . .

(b)   If the offense with which the person is charged is a felony, guilty of a Class D felony.

[2] Wis. Stat. § 943.10(1)(a) states in relevant part:

**943.10 Burglary.**   (1) Whoever intentionally enters any of the following places without the consent of the person in lawful posses-

§ 939.05.[3] After Klessig waived his preliminary hearing and was bound over for trial, his court appointed attorney asked for permission to withdraw as counsel; that motion was granted. The state public defender's office appointed another attorney who was also permitted to withdraw with Klessig's approval. The public defender's office subsequently advised Klessig that it would not appoint additional counsel, but also informed Klessig that, if he wished, he could retain his latest attorney to represent him.

¶ 4. Klessig responded by letter to the court and the public defender's office advising both that he would be acting as his own counsel and asserting that he was

sion and with intent to steal or commit a felony in such place is guilty of a Class C felony:

(a) Any building or dwelling; or . . .

[3] Wis. Stat. § 939.05 provides:

**939.05 Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime on the same act.

(2) A person is concerned in the commission of the crime if the person:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his or her mind and no longer desires that the crime be committed and notifies the other parties concerned of his or her withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

prepared for trial on the scheduled day. The letter stated:

> I would like to inform you that I will be acting on my own behalf in this case.
>
> I am prepared for the jury trial which is scedualed [sic] for December 12, 1994 in a number one position.

Shortly thereafter, Klessig appeared in court without counsel. The trial court did not, at this time or at any other time, engage in an on-the-record colloquy with the defendant concerning either the knowing or voluntary waiver of his right to counsel. The trial court also did not inquire into the defendant's competency to represent himself and proceed pro se. The following excerpt from the record documents the conversation that took place when Klessig first appeared without counsel:

> THE COURT:   State of Wisconsin versus Chad A. Klessig, 94-CF–297. Attorney Lawrence Lasee is here on behalf of the state. You're Mr. Klessig?
>
> THE DEFENDANT:   Yeah.
>
> THE COURT:   And Mr. Chad Klessig is also present. And I know I did receive a letter not too long ago from Mr. Klessig. Yes, here it is. It was to Mr. Schulz. I would like to inform you that I will be acting on my own behalf in case 94-CF–397 [sic]. I would also like to request that you inform the court of this and inform them that I am prepared for jury trial, which is scheduled for December 12, 1994, in a number one position. Thank you. Sincerely, Chad A. Klessig. Then I did get a letter from—also, another letter from you. That's dated November 13th. I

knew I had read this. And what was the charge in this case? Is it one count of burglary?

MR. LASEE: Yes, it is your honor.

THE COURT: Is there a charge of bail jumping too or not?

MR. LASEE: There is, yes.

THE COURT: Well, we'll have the jury come Monday. But do you want to have a lawyer stand behind you? In other words, they call that a standby counsel. You don't have to have a lawyer. You can represent yourself, and you have a constitutional right to do that. And I don't have any intent to interfere with any of your rights, but—

THE DEFENDANT: Yes, I would like one.

THE COURT: If you want a lawyer behind you, they call that—Not standby.

Mr. LASEE: I thought it was standby.

THE COURT: Maybe it is standby counsel. This gentleman is charged, Mr. Miller, with bail jumping and with party to a crime burglary. He's had a number of lawyers. And he is not interested in having them represent him, but I want to know—Maybe you don't wouldn't want to be—

A SPECTATOR: My client is charged with party to that crime.

THE COURT: Oh, I see.

A SPECTATOR: Thank you very much

THE COURT: All right. Did anybody—I tried to get ahold of Attorney Robert Miller.

MR. LASEE: I called his office this afternoon. He's on vacation through the 16th.

THE COURT: Mr. Cano, can you do that?

A SPECTATOR:   What's that, your honor?

THE COURT:   Can you do standby counsel or not? You're part of the public defender's office.

A SPECTATOR:   Yes I am. I don't know what we're talking about though. I just walked in.

THE COURT:   Oh. That's right. Your office could not. There's a letter here to that effect. Why don't you—You wait here. I'm going to try to find a lawyer. I'm going to go through the calendar. I'm going to find one by the end of the day who'd sit with you. All right, thank you.

¶ 5.   The bail jumping charge was dismissed and the matter went to a jury trial on the single burglary count with Klessig representing himself. The jury found Klessig guilty of party to the crime of burglary and he was sentenced to 58 months in prison.

¶ 6.   Klessig appealed the judgment of conviction. He asserted that the circuit court erred by failing to conduct a hearing on whether he was competent to proceed pro se and on whether he had knowingly, intelligently and voluntarily waived his right to counsel. The court of appeals rejected Klessig's arguments and affirmed his conviction. Klessig subsequently petitioned for review and we granted his petition on May 7, 1996.

## II.

¶ 7.   The right to the assistance of counsel is necessary to ensure that a criminal defendant receives a fair trial, that all defendants stand equal before the law, and ultimately that justice is served. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). A criminal defendant in Wisconsin is guaranteed this fundamental right to the assistance of counsel for his defense by

both Article I, § 7 of the Wisconsin Constitution[4] and the Sixth Amendment of the United States Constitution[5] as made applicable to the states by the Fourteenth Amendment.[6] *See Gideon,* 372 U.S. at 339–43; *Johnson v. Zerbst,* 304 U.S. 458, 462 (1938); *Grosjean v. American Press Co.,* 297 U.S. 233, 243–44 (1936); *Powell v. Alabama,* 287 U.S. 45, 68 (1932); *State v. Sanchez,* 201 Wis. 2d 219, 226, 548 N.W.2d 69 (1996); *Spencer v. State,* 85 Wis. 2d 565, 570, 271 N.W.2d 25 (1978). The scope, extent, and, thus, interpretation of the right to the assistance of counsel is identical under

---

[4] Wisconsin Const. art. I, § 7provides:

**Rights of Accused.** Section 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[5] The Sixth Amendment provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

[6] The Fourteenth Amendment provides in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

the Wisconsin Constitution and the United States Constitution. *Sanchez*, 201 Wis. 2d at 229.

¶ 8.   The Sixth Amendment and Article I, § 7 also give a defendant the right to conduct his own defense. Article I, § 7 gives this right explicitly: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel." *See Dietz v. State*, 149 Wis. 462, 479, 136 N.W. 166 (1912). The Sixth Amendment does not explicitly establish this right but it is "necessarily implied by the structure of the Amendment." *Faretta v. California*, 422 U.S. 806, 819 (1975); *see also Browne v. State*, 24 Wis. 2d 491, 509–511b, 129 N.W.2d 175, 131 N.W.2d 169 (1964), *cert. denied*, *Browne v. Wisconsin*, 379 U.S. 1004 (1965). Just as the right to the assistance of counsel is identical under the Wisconsin and United States Constitutions, the right to represent oneself also does not differ. Thus, in resolving this case, we give due weight to decisions concerning the Sixth Amendment.

¶ 9.   The Supreme Court has recognized that the right to represent oneself seems to conflict with the right to the assistance of counsel. *Faretta*, 422 U.S. at 832–33. This court has also noted that the interaction of these two rights "create[s] somewhat of a dilemma for the trial judge who is confronted with the unusual defendant who desires to conduct his own defense." *Pickens v. State*, 96 Wis. 2d 549, 556, 292 N.W.2d 601 (1980). When a defendant seeks to proceed pro se, the circuit court must insure that the defendant (1) has knowingly, intelligently and voluntarily waived the right to counsel, and (2) is competent to proceed pro se. *Godinez v. Moran*, 509 U.S. 389, 396; *Pickens*, 96 Wis. 2d at 568–69; *see also* Wis JI—Criminal SM–30; Wis JI—Criminal SM–30A. If these conditions are not satisfied, the circuit court must prevent the defendant

from representing himself or deprive him of his constitutional right to the assistance of counsel. However, if the defendant knowingly, intelligently and voluntarily waives his right to the assistance of counsel and is competent to proceed pro se, the circuit court must allow him to do so or deprive him of his right to represent himself.

### III.

¶ 10.  The first issue that we address is whether Klessig knowingly, intelligently and voluntarily waived his right to counsel. Whether a defendant has knowingly, intelligently and voluntarily waived his right to counsel requires the application of constitutional principles to the facts of the case, which we review independent of the circuit court. *State v. Woods*, 117 Wis. 2d 701, 715–16, 345 N.W.2d 457 (1984). Whether an individual is denied a constitutional right is a question of constitutional fact that this court reviews independently as a question of law. *State v. Cummings*, 199 Wis. 2d 721, 748, 546 N.W.2d 406 (1996). Nonwaiver is presumed unless waiver is affirmatively shown to be knowing, intelligent and voluntary. *Pickens*, 96 Wis. 2d at 555. The State has the burden of overcoming the presumption of nonwaiver. *State v. Baker*, 169 Wis. 2d 49, 77–78, 485 N.W.2d 237 (1992).

¶ 11.  The specific requirements for a valid waiver are set forth by this court's decision in *Pickens*. In that case, the defendant was charged and convicted of rape. His conviction followed an unsuccessful attempt to conduct his own defense without the aid of an attorney. On appeal, the defendant sought to have his conviction overturned because the circuit court failed to conduct an adequate inquiry to determine

whether his waiver of counsel was knowing and voluntary, and whether he was competent to conduct his own defense. For these reasons, the defendant argued that no effective waiver of counsel was given. *Pickens*, 96 Wis. 2d at 554.

¶ 12.   The *Pickens* court concluded that, based on the record, the defendant's waiver of counsel was knowing and voluntary, and that he was competent to waive counsel and to proceed pro se. *Id.* at 561. In reaching this determination, this court stated:

> Accordingly, we hold that in order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to proceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver will not be found.

*Id.* at 563–64. The *Pickens* court further stated that a colloquy on each of the above factors is not necessary in every case:

> While it is true that a valid waiver must affirmatively appear on the record, and the best way to accomplish this is for the trial court to conduct a thorough and comprehensive examination of the defendant as to each of the factors mentioned, it is the accused's apprehension, not the trial court's examination, that determines whether the waiver is valid.

*Id.* at 564. Thus, pursuant to *Pickens* the circuit court need not conduct a colloquy of the four factors in every case.

¶ 13.   We now overrule *Pickens* to the extent that we mandate the use of a colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel. Conducting such an examination of the defendant is the clearest and most efficient means of insuring that the defendant has validly waived his right to the assistance of counsel, and of preserving and documenting that valid waiver for purposes of appeal and postconviction motions. Thus, a properly conducted colloquy serves the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources. We hope that our reaffirmation of the importance of such a colloquy will encourage the circuit courts to continue their vigilance in employing such examinations.

¶ 14.   To prove such a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him. *See Pickens*, 96 Wis. 2d at 563–64. If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel.

¶ 15.   When an adequate colloquy is not conducted, and the defendant makes a motion for a new

trial or other postconviction relief from the circuit court's judgment, the circuit court must hold an evidentiary hearing on whether the waiver of the right to counsel was knowing, intelligent, and voluntary. This procedure is already followed in Wisconsin when the appeal stems from a postconviction motion challenging the validity of waiver of counsel. *Keller v. State*, 75 Wis. 2d 502, 511–12, 249 N.W.2d 773 (1977). The Supreme Court has also remanded cases stemming from habeas corpus proceedings for evidentiary hearings on whether the prisoner knowingly and voluntarily waived his right to counsel. *Boyd v. Dutton*, 405 U.S. 1 (1972); *see also Zerbst*, 304 U.S. at 469. As the circuit court did not conduct a colloquy in this case, it must now hold an evidentiary hearing to determine whether Klessig knowingly, intelligently, and voluntarily waived his right to the assistance of counsel.

■

¶ 16. The State contends that we should adopt an evidentiary hearing procedure for resolving invalid waiver of counsel claims that is similar to the procedure established by this court for the resolution of guilty plea waivers. We agree that such an approach is appropriate. Accordingly, the State is required to prove by clear and convincing evidence that Klessig's waiver of counsel was knowing, intelligent and voluntary. This will satisfy the State's burden of overcoming the presumption of non-waiver. *See Baker*, 169 Wis. 2d at 77–78, *Pickens*, 96 Wis. 2d at 555. If the State is able to satisfy its burden, the conviction will stand. If the State is unable to establish by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his right to the assistance of counsel, the defendant will be entitled to a new trial.

## IV.

¶ 17. The next issue that we consider is whether the circuit court should have made an independent determination of Klessig's competency to represent himself. Resolution of this issue is dependent on whether, in Wisconsin, there is a higher standard for measuring competency to represent oneself than for measuring competency to stand trial. The State contends that no such distinction exists. Klessig asserts that there is a distinction and that the circuit court's determination of Klessig's competency to represent himself must appear in the record. Thus, we must determine whether an accused in Wisconsin may be found competent to stand trial yet incompetent to conduct his own defense.

¶ 18. Wis. Stat. § 971.13(1) defines competency to stand trial and outlines the effects of being deemed incompetent to stand trial:

> **Competency. (1)** No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.

The United States Supreme Court has employed a similar standard: "the 'test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Dusky v. United States*, 362 U.S. 402 (1960).

¶ 19. In *Pickens*, this court held that "competency to stand trial is not the same as competency to proceed pro se and that, even though he has knowingly waived counsel and elected to do so, a defendant may

be prevented from representing himself." *Pickens*, 96 Wis. 2d at 567. The State however contends that the *Pickens* decision has been superseded by the Supreme Court's decision in *Godinez*, 509 U.S. 389. The State asserts that, in reaching the conclusion that competency to represent oneself involved a higher standard than competency to stand trial, the *Pickens* court relied on Supreme Court precedent. Thus, according to the State, the more recent Supreme Court case of *Godinez* which holds that competency to represent oneself does not involve a higher standard is controlling on this issue.

¶ 20.   In *Godinez*, the Supreme Court held that competency to waive the right to counsel is not measured by a higher standard than the standard employed to determine competency to stand trial. *Godinez*, 509 U.S. at 398. The Supreme Court stated:

> Nor do we think that a defendant who waives his right to the assistance of counsel must be more competent than a defendant who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights.

*Id.* at 399. The Supreme Court further indicated that states were free to adopt higher standards for measuring a defendant's competency to represent himself:

> While psychiatrists and scholars may find it useful to classify the various kinds and degrees of competence, and while *States are free to adopt competency standards that are more elaborate than the Dusky formulation,* the Due Process Clause does not impose these additional requirements.

*Id.* at 402 (emphasis added) (citations omitted).[7] Thus, we must next determine whether the higher standard adopted in *Pickens* falls within this exception. The State contends that the higher standard established in *Pickens* was effectively overruled by *Godinez* because the *Pickens* decision was based on an incorrect interpretation of Supreme Court decisions.

¶ 21.  In *Pickens*, this court did consider the relevance of Supreme Court decisions in reaching the decision that competency to represent oneself was measured by a higher standard than competency to stand trial. First, the *Pickens* court noted that some courts had read the Supreme Court's decision in *Westbrook v. Arizona*, 384 U.S. 150 (1966), to suggest that the standard for competence to represent oneself was higher than the standard for competence to stand trial. *Pickens*, 96 Wis. 2d at 566. The *Pickens* court also noted that other courts had considered *Westbrook* to suggest that the two standards were the same. *Id.* at 566–67. Second, the *Pickens* court cited the Supreme Court's

---

[7] As noted in the concurrence, *Godinez* can be read to automatically define the scope of a defendant's right to represent himself in that it defines the scope of a defendant's competency to represent himself. *Godinez* stands for the proposition that competency to represent oneself is not measured by a higher standard than competency to stand trial. *Godinez*, 509 U.S. at 399–400. This holding could be interpreted to mean that if a defendant has knowingly and voluntarily waived his right to counsel and is competent to stand trial, that he will be deprived of his constitutional right to represent himself if he is not allowed to do so. Such a reading of *Godinez* leads to the conclusion that states are not free to adopt a higher standard for measuring competency to represent oneself than for measuring competency to stand trial. As this reading is inconsistent with the statement in *Godinez* that states are free to adopt different standards, we decline to so interpret *Godinez*. *See id.* at 402.

statement that "[o]ne might not be insane in the sense of being incapable to stand trial and yet lack the capacity to stand trial without benefit of counsel." *Id.* at 567–68, *quoting Massey v. Moore*, 348 U.S. 105, 108 (1954). Third, this court stated that *Faretta* indicated that "literacy and a basic understanding over and above the competence to stand trial may be required." *Pickens*, 96 Wis. 2d at 568. Finally, the *Pickens* court cited *Faretta* for the proposition that neither the State nor the defendant is served when a conviction is "obtained as a result of an incompetent defendant's attempt to defend himself." *Id., citing Faretta*, 422 U.S. at 839–40 (Burger, C.J. dissenting). Despite the consideration of these cases, the establishment of a higher standard for measuring competence to represent oneself was primarily based on a careful contemplation of public policy.

¶ 22.   The *Pickens* court first examined the standard for determining competency to stand trial which requires that a defendant is able to understand the proceedings against him and to assist in his own defense. *Pickens*, 96 Wis. 2d at 567, *citing* Wis. Stat. § 971.13 (1979–1980). This court reasoned that "[c]ertainly more is required where the defendant is to actually conduct his own defense and not merely assist in it." *Pickens*, 96 Wis. 2d at 567. We further reasoned that "a defendant who, while mentally competent to be tried, is simply incapable of effective communication or, because of less than average intellectual powers, is unable to attain the minimum understanding necessary to present a defense, is not to be allowed 'to go to jail under his own banner.' " *Id.* at 568, *quoting United States v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965). Our decision in *Pickens* to impose a higher standard for measuring competency to represent oneself was based

on a logical policy analysis rather than an interpretation of Supreme Court cases. This is the type of higher standard that was recognized in the *Godinez* decision as being within each state's power to adopt.

■

¶ 23.   We thus affirm the holding in *Pickens* as still controlling on the issue of competency. In Wisconsin, there is a higher standard for determining whether a defendant is competent to represent oneself than for determining whether a defendant is competent to stand trial.[8] This higher standard is not based on the requirements of the Sixth Amendment, but stems from the independent adoption of the higher standard by the State as allowed under *Godinez*. Accordingly, the circuit court's determination of a defendant's competency to proceed pro se must appear in the record.

¶ 24.   In making a determination on a defendant's competency to represent himself, the circuit court should consider factors such as "the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury." *Pickens*, 96 Wis. 2d at 569. The *Pickens* court emphasized that the competency determination should not prevent persons of average ability and intelligence from representing themselves unless "a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist." *Id.* This court further stated that this determination must rest to a large extent upon the judgment and experience of the trial judge. *Id.*

---

[8] *See* Wis JI-Criminal SM–30A for a discussion of what is required of the circuit court in determining whether a defendant is competent to represent himself or herself.

¶ 25.   We must next decide how to proceed when the circuit court has failed to independently consider the defendant's competence to represent himself. In *Pickens*, this court concluded that the defendant was competent to represent himself based on the facts in the record:

> [A]lthough the trial court apparently failed to appreciate the distinction we have noted between competency to proceed and competency to proceed pro se, it does not follow that the defendant's conviction must therefore be set aside. We are convinced from our reading of the record that the defendant possessed more than the minimal competence necessary to conduct his own defense.

*Id.* at 570. In concluding that the defendant was competent to proceed pro se, this court considered such factors as the defendant's ability to read and write, his informal study at a university, his informal study of the law, his verbal skills and intellectual ability, and his actual handling of the case. *Id.* at 570–71.

¶ 26.   We decline to make such a determination based on the record in this case, but instead remand for a determination by the circuit court. The circuit court should first determine whether it can make an adequate and meaningful nunc pro tunc inquiry into the question of whether Klessig was competent to proceed pro se. If the circuit court concludes that it can conduct such an inquiry, then it must hold an evidentiary hearing on whether Klessig was competent to proceed pro se. If the circuit court finds that a meaningful hearing cannot be conducted, or that Klessig was not competent to proceed pro se, then Klessig must be granted a new trial. *See State v. Johnson*, 133 Wis. 2d 207, 226–27,

395 N.W.2d 176 (1986) (instituting a similar procedure for determination of competency to stand trial).[9]

¶ 27.  In summary, the circuit court must determine whether Klessig knowingly, intelligently, and voluntarily waived his right to the assistance of counsel. If the answer to this question is yes, the circuit court must next determine whether Klessig was competent to represent himself. If the answer to this question is also yes, the conviction must stand. If, however, the answer to either question is no, Klessig is entitled to a new trial.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 28.  SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I join in the mandate of the majority opinion. I write separately to call attention to a troubling implication of the majority opinion's reaffirmance of *Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980). I am concerned that the rule set forth in *Pickens* may be irreconcilable with the recent pronouncement of the United States Supreme Court in *Godinez v. Moran*, 509 U.S. 389 (1993).

¶ 29.  A standard of competency for representing oneself at trial that is higher than the standard for competency to stand trial may be seen, as it was in

---

[9] In so holding, we note, however, that such an evidentiary hearing may not be necessary in every case where the circuit court has not made a determination that a pro se defendant was competent to represent himself. Certainly, in some cases, like *Pickens* the record will be so clear that an evidentiary hearing is not necessary.

*Pickens*, as providing greater protection to a defendant who might otherwise and to his detriment proceed *pro se*. Such a protection, however, may be seen as an infringement of a defendant's constitutional right to self-representation. A defendant who is found competent to stand trial but found not competent for self-representation would appear to be denied his Sixth Amendment right to self-representation if forced to go to trial with counsel.

¶ 30.   The defendant in the case at bar cannot assert that he has been denied his right to self-representation; he has already exercised that right; now he wants a new trial *with* counsel. Accordingly, the validity of a heightened standard of competency for self-representation is not squarely presented in this case and was not explicitly raised by the parties. Under these circumstances I do not believe it appropriate to resolve the issue definitively at this point. I believe it important, however, to express a concern with the *Pickens* rule. I also want to comment on the *nunc pro tunc* inquiries on remand suggested by the majority opinion.

I.

¶ 31.   In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court held that a criminal defendant has an independent constitutional right to self-representation. The Court has said that the right to self-representation, which is "necessarily implied by the structure of the [Sixth] Amendment," *id.* at 819–20 and n.15, "exists to affirm the accused's individual dignity and autonomy," *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). The right is grounded in "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an

unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta*, 422 U.S. at 817.

¶ 32.  Because the right to self-representation is of equal dignity with the right to counsel, there appear to be few circumstances under which a court may deny a timely request for self-representation. The *Faretta* Court mentioned only one: when a defendant "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46.[1] Since the Court's decision in *Faretta*, state and lower federal courts have struggled with one further question: what form and degree of competency, mental and otherwise, is required of a defendant who seeks to exercise the right to self-representation? Put another way, courts have sought to determine whether only competent defendants may exercise the right to self-representation and what standard of competency conditions the exercise of that right.

¶ 33.  A number of courts have resolved that the competency required to represent oneself is the same as the competency required to stand trial. *See, e.g., People v. Reason*, 334 N.E.2d 572, 573–74 (N.Y. 1975). In *Pickens* the Wisconsin supreme court concluded that the standard of competency required to waive one's right to counsel and represent oneself at trial is different from, and higher than, the standard for competency to stand trial. The *Pickens* court held as follows: "[W]e have concluded that competency to stand trial is not the same as competency to proceed *pro se* and that, even though he has knowingly waived counsel and

---

[1] Denial of the right to self-representation is not amenable to harmless error analysis. *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 n.8 (1984) ("The right is either respected or denied; its deprivation cannot be harmless.").

elected to do so, a defendant may be prevented from representing himself." *Pickens*, 96 Wis. 2d at 567.

¶ 34. *Pickens* can be seen as having held that only a competent defendant can exercise the right to self-representation and that the competency at issue is different from and additional to the competency required to stand trial. As long as the right to self-representation was understood as limited by the defendant's competency for self-representation, states were free to require that some defendants who were competent to stand trial could be required to stand trial with the assistance of counsel.

¶ 35. While I believe it correct as a practical matter that "more is required where the defendant is to actually conduct his own defense and not merely assist in it," *Pickens*, 96 Wis. 2d at 567, the *Godinez* decision has changed the legal landscape. As a matter of federal constitutional law, the United States Supreme Court has held that the competency required to waive counsel and proceed *pro se* is the same as the competency required to stand trial. *Godinez*, 509 U.S. at 399–400. Because the respective competency standards delimit the scope of the right to self-representation, *Godinez* may have circumscribed states' ability to apply a higher standard of competency for self-representation than for competency to stand trial.

¶ 36. Under *Pickens* and the majority opinion, if Wisconsin continues to employ the minimal federal standard for competency to stand trial, some Wisconsin defendants will be found competent to stand trial but not competent to represent themselves. These defendants will be required to stand trial, but will be prevented from representing themselves. The protection thus afforded these defendants would appear to

diminish their federal constitutional right to self-representation.

¶ 37.   Although states may provide broader rights under state law, they may not do so when the protection afforded by the broader right simultaneously diminishes a federal constitutional right. In short, there is a question whether Wisconsin is free to afford greater protection to a marginally competent defendant who seeks to represent himself.

¶ 38.   The majority opinion reads the following passage from *Godinez* as expressly allowing a state to entertain a standard of competency for self-representation higher than its standard of competency to stand trial:

> Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel. While psychiatrists and scholars may find it useful to classify the various kinds and degrees of competence, and while *States are free to adopt competency standards that are more elaborate than the Dusky [v. United States, 362 U.S. 402 (1960)] formulation, the Due Process Clause does not impose additional requirements.*

*Godinez*, 509 U.S. at 402 (emphasis added).

¶ 39.   This passage can be read as allowing states to entertain a higher standard of competency for self-representation, as the majority concludes. Majority op. at 209–10. However, this is not the only way to read the passage. The passage may also be read as allowing states to entertain a standard of competency higher than *Dusky* requires only if that standard is applied equally to competency to stand trial and competency for self-representation. If the Court intended the first

meaning it did not explain how this higher standard could be applied consistent with *Faretta*, nor, as far as I am aware, has any subsequent court or commentator explained this apparent dilemma.

¶ 40. Some courts that have considered this issue after *Godinez* have concluded that a state may no longer apply different standards of competency for self-representation and competency to stand trial. The challenge to a state's higher standard generally comes in a case presenting the opposite procedural posture from that presented in the case at bar: a defendant who had been found competent to stand trial was precluded from proceeding *pro se* because of a finding of lack of competency for self-representation; after conviction, the defendant alleges that the court's effort to protect him from the dangers of self-representation violated his *Faretta* right.

¶ 41. In *State v. Day*, 661 A.2d 539 (Conn. 1995), Chief Justice Ellen Peters stated the problem as follows:

> The United States Supreme Court's opinion [in *Godinez*] does not mandate a particular test for competency, explicitly recognizing that "[s]tates are free to adopt competency standards that are more elaborate" than the formulation used in federal court. A state does not, therefore, impermissibly burden the exercise of the right to self-representation by adopting a competency standard more protective than the *Dusky* formulation. Whatever standard is employed, however, it must be applied equally at the various stages of a trial to pass constitutional muster.
>
> The *Godinez* decision has been criticized for failing to recognize that competency evaluations necessarily entail a contextual inquiry, the results of which

should not be imported automatically from one situation to another. . . .

For present purposes, however, the question is settled until such time as the United States Supreme Court chooses to revisit it. Under *Godinez*, we are bound to rule that a defendant who has been found competent to stand trial as a matter of state law also is competent to waive the right to counsel. Application of a stricter competency test in the latter analysis than was used in the former would place an unconstitutional burden on the exercise of the defendant's federal constitutional right to self-representation.

*Day*, 661 A.2d at 548 (citations omitted).[2]

---

[2] *See also State v. Thornblad*, 513 N.W.2d 260, 262–63 (Minn. Ct. App. 1994) ("unless the same standard applied to both the competency to stand trial and to represent oneself, a state probably could not create a competency test that did not place a greater restriction on the right to self-representation than the Constitution allows"); *People v. Poplawski*, 30 Cal. Rptr. 2d 760, 766–67 (Cal. Ct. App. 1994) (disavowing pre-*Godinez* decisions imposing additional competency requirements for self-representation).

For discussions of the interplay of *Godinez* and *Faretta* see Brian R. Boch, *Fourteenth Amendment—The Standard of Mental Competency to Waive Constitutional Rights Versus the Competency Standard to Stand Trial*, 84 J. Crim. L. & Criminology 883 (1994); John F. Decker, *The Sixth Amendment Right to Shoot Oneself in the Foot: An Assessment of the Guarantee of Self-Representation Twenty Years After Faretta*, 6 Seton Hall Const. L.J. 483 (1996); Alan R. Felthous, M.D., *The Right to Represent Oneself Incompetently: Competency to Waive Counsel and Conduct One's Own Defense Before and After Godinez*, 18 Mental & Physical Disability L. Rep. 105 (1994); Ronald L. Kuby & William M. Kunstler, *So Crazy He Thinks He Is Sane: The Colin Ferguson Trial and the Competency Standard*, 5 Cor-

¶ 42.    When a case raising this issue is squarely presented the court will have to resolve the tension among *Pickens, Farreta* and *Godinez*. It may be that when the issue is presented and briefed, the arguments will explain how *Godinez* has indeed not precluded states from entertaining more protective standards of competency for self-representation. *Godinez* may be found distinguishable because it did not address the issue of competency to represent oneself at trial but only the issues of competency to waive the right to counsel and to plead guilty.[3] Perhaps, by the time the issue is presented here, the United States Supreme Court will have clarified the import of its decision, or reconsidered it.

¶ 43.    In the present case, the defendant was allowed to represent himself and now argues that his right to counsel was violated because the circuit court failed to determine his competency for self-representation. Because the case at bar does not present a *Faretta*

nell J.L. & Pub. Pol'y 19 (1995); Luke Stephen Vadas, Note, *Godinez v. Moran: An Insane Rule for Competency?*, 39 Loy. L. Rev. 903 (1994).

[3] The Illinois Supreme Court apparently found *Godinez* not dispositive under the following circumstances: a defendant was found competent to stand trial, expressly waived his right to counsel after two thorough colloquys with the court and was allowed to proceed to trial *pro se*. The court reversed the defendant's conviction and remanded for a new trial, concluding as follows:

> If by virtue of delusion occasioned by mental illness a defendant believes falsely that his legal skills equal or exceed those of virtually any attorney who might represent him, he can hardly be said to be aware of the dangers and disadvantages of self-representation or to know what he is doing and to be making his choice with eyes open.

*People v. Lego*, 660 N.E.2d 971, 979 (Ill. 1995).

challenge but the opposite inquiry, the court properly does not decide the question whether *Pickens*, in light of *Godinez*, violates *Faretta*. Because *Pickens* recognizes the unique and serious dangers facing a defendant seeking to represent himself at trial, the court properly follows *Pickens* in this case.

## II.

¶ 44.   I write further to make some observations about the *nunc pro tunc* (now for then) inquiries suggested by the majority opinion. I believe that in very few cases will a circuit court be able to determine *nunc pro tunc* whether the defendant knowingly and voluntarily waived his right to counsel at the original proceeding. When the record is devoid of any indication that the defendant was apprised of the rights he was foregoing, as in this case, it is hard to conceive of a meaningful inquiry that would reveal a knowing and voluntary waiver.

¶ 45.   The retrospective determination of competency may be even more difficult than the determination of waiver, and a *nunc pro tunc* inquiry even less meaningful. Several United States Supreme Court decisions have declined to allow states to conduct a *nunc pro tunc* inquiry to determine competency to stand trial. *Drope v. Missouri*, 420 U.S. 162, 183 (1975); *Pate v. Robinson*, 383 U.S. 375, 387 (1966); *Dusky*, 362 U.S. at 403. While the Court in those cases did not hold that such an inquiry is constitutionally impermissible, we should recognize the difficulty, if not the impossibility, of conducting a meaningful *nunc pro tunc* competency inquiry.

¶ 46.   Both with regard to competency and knowing and voluntary waiver of the right to counsel, courts

must take care to avoid diminishing the rights which they must jealously guard. As one opinion has put it:

> Never have we remanded such a case in an effort to put Humpty Dumpty back together again. We trivialize a fundamental constitutional right by allowing the State to try its case as to the waiver of that right by trial and error. Where the record is inadequate to establish the waiver of a constitutional entitlement, there simply is no waiver.

*State v. Merrill*, 584 A.2d 1129, 1133 (Vt. 1990) (Mahady, J., concurring). I consider the *nunc pro tunc* inquiries suggested today to be an experiment. If the retrospective hearings prove unworkable they should be abandoned.

¶ 47.　For the foregoing reasons, I concur.