**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 2, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP708-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1184

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THOMAS D. KENT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Eau Claire County: JOHN F. MANYDEEDS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Thomas Kent appeals from a multi-count criminal judgment of conviction and an order denying his postconviction motion. Kent

contends he is entitled to a new trial because the circuit court allowed him to proceed pro se when the record does not show that he was competent to represent himself. We conclude, however, that the record supports the court's determination that Kent was competent to represent himself. Accordingly, we affirm.

## BACKGROUND

¶2     The State charged Kent with multiple counts of possession of child pornography based upon an undercover investigation that culminated in the seizure of his laptop pursuant to a search warrant. At Kent's arraignment, with the assistance of counsel appearing as a "friend of the court," Kent stood mute rather than enter a plea because he wished to challenge the circuit court's jurisdiction.[1] Kent asserted: "The State is a corporation. A corporation is a fiction. Fiction doesn't have authority over a human being."

¶3     The preliminary hearing was adjourned twice because Kent repeatedly refused to fill out the paperwork to determine whether he was eligible for State public defender representation. Kent told the circuit court that he would not sign the paperwork because he did not want "to contract." When the State suggested that Kent had an "ideologic belief against attorneys," Kent agreed that was true.

¶4     Following the preliminary hearing, the circuit court appointed attorney Matthew Krische as standby counsel for Kent. Krische went to the Eau Claire County Jail on several occasions to review the discovery materials with

---

[1] Kent did not raise a traditional challenge against either personal or subject matter jurisdiction, but rather a general assertion that the court system was illegitimate.

Kent and discuss the case, but Kent refused to meet with Krisch. Despite Kent's lack of cooperation, Krische appeared as standby counsel throughout the proceedings, including at the trial.

¶5 At a series of pretrial hearings and status conferences, the circuit court continued to ask Kent whether he had changed his mind about representing himself, and Kent continued to refuse counsel. Kent told the court he did not want an attorney because "you're gonna do whatever the hell you want to anyway so I might as well not even be here." Kent again asserted that the court lacked jurisdiction over him because "[t]he state is a corporation … [with] no authority over a living being," and that being represented by an attorney who worked for the state would be "collusion." He further claimed that the entire judicial system was "all about … profit," and "they" were acting "under the color of the law."

¶6 On the first day of trial, the circuit court conducted another colloquy to determine that Kent was affirmatively waiving his right to counsel. Among other things, the court ascertained that Kent was sixty-two years old; he had a high school degree and had attended technical school; and he was not suffering from any mental health issues or physical problems aside from high blood pressure. Kent reiterated that he did not want the assistance of counsel because "[i]t won't … change a thing." The court found that Kent knowingly, voluntarily and intelligently waived his right to counsel, but did not expressly address the question of competency.

¶7 Kent's participation at trial was minimal. Kent did not call any witnesses or testify on his own behalf. He asked only a handful of questions on cross-examination, none of which were relevant to the elements of the charged offenses. His brief opening statement and closing argument likewise made

3

oblique references to his perception of the circuit court's lack of jurisdiction over him—such as questioning why the State did not have to follow the rules, and asserting that the prosecution was made "under the color of the law"—without addressing the evidence at trial.

¶8      Following his conviction and sentencing on all counts, Kent moved for a new trial on the grounds that he had been denied his right to counsel because he was not competent to proceed pro se.  The circuit court found that Kent had demonstrated the ability to represent himself, and it denied the motion.  Kent now appeals.

## DISCUSSION

¶9      The United States and Wisconsin Constitutions provide criminal defendants with the right to choose whether to proceed with the assistance of counsel or to conduct their own defense.  U.S. CONST. amend. VI; WIS. CONST. art. I, § 7; *Faretta v. California*, 422 U.S. 806, 818-21 (1975); *State v. Klessig*, 211 Wis. 2d 194, 201-03, 564 N.W.2d 716 (1997).  The right to counsel attaches automatically and it remains in effect throughout a criminal proceeding unless it is affirmatively waived in a knowing, voluntary and intelligent manner by a defendant who is competent to proceed pro se.  *Klessig*, 211 Wis. 2d at 203-04.  Here, Kent does not dispute that the circuit court properly determined that Kent's waiver was knowingly, voluntarily and intelligently made.  The only question before us is whether Kent was competent to proceed pro se.

¶10     The competency limitation on the right to self-representation should not prevent a person "of average ability and intelligence" from proceeding pro se, even if the person lacks "technical legal knowledge" or demonstrates "unusual conduct or beliefs."  *Id.* at 212; *Dane Cnty. DHS v. Susan P. S.*, 2006 WI App

4

100, ¶20, 293 Wis. 2d 279, 715 N.W.2d 692. Rather, a person should be found competent to proceed pro se as long as he or she is capable of "meaningful" representation—that is, able to make arguments, present evidence, and ask effective questions. *Susan P. S.*, 293 Wis. 2d 279, ¶18.

¶11 In evaluating a person's ability for meaningful self-representation, the circuit court should consider factors such as:

> education, literacy, fluency in English, the ability to communicate effectively, the complexity of the case, the ability to put the other side to its burden of proof, the ability to understand what is necessary to present a defense, experience in the legal system, a person's actual handling of the case, whether the person is unruly or unmanageable, physical disabilities, psychological disabilities, mental illness, and [any expert opinions].

*Id.*, ¶19. Because the circuit court is in the best position to observe the defendant and thus evaluate several of these factors, we will uphold its determination regarding a defendant's competence for self-representation unless it is "totally unsupported by the facts apparent in the record." *Id.*, ¶22 (citation omitted; emphasis omitted).

¶12 The following facts in the record support the circuit court's competency determination in this case. Kent had a high school degree and some technical school training. He both spoke and read English, and he was able to effectively communicate with the court about his desire to represent himself. Kent denied suffering from any mental illness or physical disability aside from high blood pressure, and there is nothing in the record showing otherwise. Kent's interactions with the court were respectful and responsive, demonstrating that he understood what was happening during the proceedings, and the record does not

show that Kent displayed any disruptive or inappropriate behavior before the jury. Furthermore, this case was not complex; the State presented only four witnesses.

¶13    Despite Kent's apparent possession of average abilities and the straightforward nature of the case, Kent nonetheless contends he was unable to provide meaningful self-representation.  He argues that the record demonstrates he lacked the competence to represent himself because he: (1) expressed ambivalent understanding in response to multiple questions asked by the circuit court; (2) repeatedly refused to review discovery materials or other documents such as the jury instructions; (3) attended the trial wearing "jail orange"; (4) did not object to a comment the prosecutor made regarding Kent's invocation of his right against self-incrimination; and (5) did not present any defense against the charges.  None of these contentions are persuasive.

¶14    At various points throughout the proceedings, Kent indicated a lack of understanding about some aspects of the proceedings in response to questions from the circuit court.  This expressed lack of legal knowledge is not surprising given that Kent had never been through a jury trial before.  In nearly every instance, once the court explained the procedure, Kent indicated that he understood the court's explanation.  The most significant exception was Kent's persistent assertion that the court lacked jurisdiction over him.  The record shows, however, that this mistaken assertion was based upon Kent's perceived worldview rather than any cognitive disability that would impede his ability to understand how a trial worked.

¶15    Kent's belief that the circuit court lacked jurisdiction over him because the State is a fiction and Kent is a living human being (commonly known as a "sovereign-citizen" defense) explains his refusal to review discovery

materials, to wear street clothing to trial, to call witnesses, to raise objections, or to make any evidence-based arguments to the jury. *See **United States v. Banks***, 828 F.3d 609, 616-17 (7th Cir. 2016). However unwise it might have been for Kent to rely upon his sovereign-citizen beliefs, and to refuse to meaningfully participate in the proceedings beyond asserting those beliefs, it was his constitutional right to do so. *See **id.***

¶16    In short, the record does not show that Kent was *incapable* of presenting a meaningful defense due to any lack of mental ability or communication skills; it shows that he *refused* to do so in accordance with his pessimistic view of the legal system and resignation about the outcome of the trial. We conclude that the circuit court properly accepted Kent's waiver of his right to counsel and allowed him to proceed pro se.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).