COURT OF APPEALS
DECISION
DATED AND FILED

October 4, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1786-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF2755

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DEMOYNE J. DAVIS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DENNIS R. CIMPL and DANIELLE L. SHELTON, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Demoyne J. Davis appeals his judgment of conviction for two counts of armed robbery, as a party to a crime, as well as the order denying his postconviction motion. Davis argues that his Sixth Amendment right to self-representation was violated when the trial court[1] denied his request during his trial to proceed *pro se*. Upon review, we affirm.

## BACKGROUND

¶2 The charges against Davis stem from an incident that occurred in April 2017. According to the criminal complaint, M.P.J. and his wife, S.L.J., were at a car dealership on Appleton Avenue in Milwaukee, attempting to buy two vehicles for cash. M.P.J. stated that the sales associate they were dealing with made a call on his cell phone, and approximately fifteen minutes later, two males arrived at the dealership. The sales associate then told M.P.J. and his wife that he was going to get them an ignition key, but never returned. Within one to two minutes, the two men approached M.P.J. and S.L.J. and robbed them at gunpoint, stealing $3600 from M.P.J. and $5850 from S.L.J., along with their cells phones and M.P.J.'s sunglasses.

¶3 Surveillance video footage of the robbery was provided to the local media. Davis's co-actor, Glen Jeffery, was identified and turned himself in. Additionally, an informant provided Davis's name to the Milwaukee Police Department, and the investigating detective discovered that Davis was on extended supervision at that time for armed robbery. Davis's parole officer identified him from the surveillance video.

---

[1] Davis's trial was before the Honorable Dennis R. Cimpl; we refer to him as the trial court.

¶4    Davis was initially charged with one count of armed robbery as a party to a crime, but the information was later amended to two counts—one count for each victim. Attorney Stephen Sargent was appointed as his counsel. At a pre-trial hearing, Attorney Sargent informed the trial court that Davis wanted a new lawyer. Attorney Sargent stated that he and Davis had a "discussion" about using "appropriate language." Davis, on the other hand, told the court that Attorney Sargent had "blatantly" told Davis that he did not work for him, and had called him a "joke." Davis also stated that Attorney Sargent was not acting in his "best interest," because he had asked Attorney Sargent to do "specific things" but that Attorney Sargent had "his own agenda."

¶5    The trial court did not find Davis's accusations to be credible. The court also explained to Davis that his attorney was "in charge" of trial strategy. Nevertheless, the court agreed to allow Attorney Sargent to withdraw when Davis maintained that he wanted a new attorney.

¶6    Attorney Marcella DePeters was then appointed to represent Davis. However, at the final pre-trial hearing, Attorney DePeters requested to withdraw as Davis's counsel, stating that she did not believe she could "get along with this particular defendant." During an outburst in court, Davis accused Attorney DePeters of not "honor[ing] [his] requests[.]" The court explained—again—that the attorney was in charge of trial strategy. The court further advised Davis that his new lawyer would be the last one provided by the State Public Defender's Office, and that if he did not get along with that new lawyer, "you're either going to be stuck with that lawyer or you're going to represent yourself. Or you hire a lawyer." The court then allowed Attorney DePeters to withdraw as Davis's counsel.

¶7 Attorney Gary Rosenthal was then appointed as Davis's attorney. The matter proceeded to trial in February 2019, with Davis and Jeffery being tried together.

¶8 On the second day of trial, Attorney Rosenthal requested a sidebar conference. Out of the presence of the jury, the trial court stated for the record that Attorney Rosenthal had informed the court during the sidebar that Davis had requested to proceed *pro se*. The court proceeded to ask Davis if this was correct, to which Davis responded, "I told Mr. Rosenthal I'd be better off *pro se*. I never said I wanted to go *pro se*." Davis then indicated that he did not want to proceed *pro se*, but rather that he wanted to fire Attorney Rosenthal.

¶9 The trial court advised Davis that because they were already in the middle of the trial, Davis's only options were to keep Attorney Rosenthal as his counsel or proceed *pro se*. Davis then stated that he wanted to represent himself.

¶10 The trial court proceeded to engage in the required colloquy with Davis to determine whether Davis was knowingly, intelligently, and voluntarily waiving his right to counsel. *See* ***State v. Klessig***, 211 Wis. 2d 194, 206-07, 564 N.W.2d 716 (1997). In an exchange dotted with outbursts and profanity from Davis, the court asked Davis, among other things, whether he understood the charges against him; specifically, that he was charged with two counts of armed robbery. Davis repeatedly stated that he did not understand why he was charged with two counts of armed robbery instead of just one count for "one armed robbery incident," or why the penalties would be doubled upon his conviction of both counts. The court also explained that neither it nor the prosecutor could provide Davis with legal advice or explain court procedures to him; Davis replied that he did not understand that, either.

4

¶11     After completing the colloquy, the trial court determined that because Davis had replied that he did not understand these questions, it was denying his request to proceed *pro se*.[2]   Shortly thereafter—before the trial proceedings continued—Davis admitted, through Attorney Rosenthal, that some of his answers during the colloquy were "given in effect as obstruction rather than as a correct answer[.]" However, Attorney Rosenthal stated that Davis had indicated that he did not want to pursue his *pro se* request, and instead wanted to proceed with Attorney Rosenthal representing him.

¶12     The trial proceeded, and Davis was convicted of both counts of armed robbery, as a party to a crime. He was sentenced to two consecutive eleven-year terms of imprisonment, bifurcated as seven years of initial confinement followed by four years of extended supervision for each count.

¶13     Davis subsequently filed a postconviction motion, arguing that he was denied his right to self-representation. Specifically, Davis asserted that the trial court's determination was based on an inaccurate portrayal of Davis's answers during the colloquy. The postconviction court,[3] however, determined that Davis's answers did not satisfy the factors for waiving his right to counsel, as set forth in ***Klessig***. *See id.* at 206. Furthermore, the postconviction court noted that not only had Davis conceded to being obstructive during the colloquy, he had also ultimately stated that he did not want to pursue proceeding *pro se*. Therefore, the

---

[2] During the trial court's colloquy with Davis, Jeffery declared that he also wanted to proceed *pro se*. The court engaged in a colloquy with Jeffery, and because he responded that he understood all of the court's questions, the court granted his request to proceed *pro se*. However, before the trial proceedings continued, Jeffery informed the court that he had a "change of heart" and did not wish to represent himself.

[3] Davis's postconviction motion was decided by the Honorable Danielle L. Shelton; we refer to her as the postconviction court.

postconviction court found no error in the trial court's denial of Davis's request, and denied his motion. This appeal follows.

## DISCUSSION

¶14 Defendants have the right to conduct their own defense under both the Sixth Amendment of the United States Constitution and Article I, § 7 of the Wisconsin Constitution. *Klessig*, 211 Wis. 2d at 203; *see also* *Faretta v. California*, 422 U.S. 806, 819 (1975) (although not explicitly stated in the Sixth Amendment, this right is "necessarily implied by the structure of the Amendment"). Whether a defendant's constitutional right to self-representation has been violated is a question of law, which this court reviews *de novo*. *State v. Darby*, 2009 WI App 50, ¶13, 317 Wis. 2d 478, 766 N.W.2d 770.

¶15 A defendant who wishes to invoke the right of self-representation must "clearly and unequivocally" inform the trial court of this decision. *Faretta*, 422 U.S. at 835. If the defendant establishes this request clearly and unequivocally, the trial court must then ensure that the defendant "has knowingly, intelligently and voluntarily waived the right to counsel," and that the defendant is "competent to proceed *pro se*." *Klessig*, 211 Wis. 2d at 203.

¶16 To establish these requirements, the trial court must engage in a colloquy with the defendant to confirm the defendant's understanding of the ramifications that relate to this choice. *Id.* at 206. During that colloquy, the court should establish that the defendant: "(1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him." *Id.* "[A]s long as the [trial] court finds that one of the four

6

conditions is not met, the court cannot permit the defendant to represent himself." *State v. Imani*, 2010 WI 66, ¶26, 326 Wis. 2d 179, 786 N.W.2d 40.

¶17 Here, it is clear from the record that Davis repeatedly stated that he did not understand the charges against him—specifically, that he was charged with two counts of armed robbery, as opposed to one count for the entire incident—and that he did not understand the range of the penalties that could be imposed against him. Thus, two of the *Klessig* factors were not satisfied. *See id.*, 211 Wis. 2d at 206.

¶18 Furthermore, after admitting to making some obstructionist comments during the colloquy, Davis stated that he did not want to pursue proceeding *pro se*. This relinquishing of his request so quickly after making it calls into question whether he had actually made a "deliberate choice to proceed without counsel," the first *Klessig* factor. *See id.*

¶19 Additionally, Davis's request to proceed *pro se* came after the jury trial had already commenced. Moreover, it was made after he had "fired" two lawyers while his trial was pending, and was seeking to fire the third.

¶20 Our supreme court has previously determined that "the right to [c]ounsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice." *Hamiel v. State*, 92 Wis. 2d 656, 672, 285 N.W.2d 639 (1979) (citation omitted). These same considerations "apply when the right involved is that of self-representation." *Id.* at 673. While both the right to secure other counsel and the right to proceed *pro se* "are guaranteed by the Sixth Amendment and are intended to ensure the defendant's right to a full and fair trial, they are not intended to allow the defendant the opportunity to [a]void or delay the trial for any unjustifiable reason." *Id.* Furthermore, when the request to proceed

7

*pro se* is made "on the day of trial," the "determinative question is whether the request is proffered merely to secure delay or tactical advantage." ***Id.*** Davis's conduct with regard to his representation, throughout the proceedings, suggests such manipulation of the judicial process.

¶21 Therefore, we conclude that Davis's right to self-representation was not violated. Accordingly, we affirm his judgment of conviction and the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).