STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Rashaad A. IMANI, Defendant-Appellant.

Supreme Court

*No. 2008AP1521–CR. Oral Argument February 9, 2010.*
*—Decided July 7, 2010*

2010 WI 66

(Also reported in 786 N.W.2d 40.)

For the plaintiff-respondent-petitioner the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant there was a brief filed by *Basil M. Loeb* and *Schmidlkofer, Toth & Loeb, LLC*, Wauwatosa, and oral argument by *Basil M. Loeb*.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published court of appeals decision[1] that reversed a judgment entered on a jury verdict by the Waukesha County Circuit Court, J. Mac Davis, Judge. Rashaad A. Imani (Imani) was convicted of one count each of armed robbery, as party to a crime, in violation of Wis. Stat. § 943.32(2) (2007–08)[2] and possession of a firearm by a felon in violation of Wis. Stat. § 941.29(2),[3] both as a repeater pursuant to Wis. Stat.

---

[1] *State v. Imani*, 2009 WI App 98, 320 Wis. 2d 505, 771 N.W.2d 379.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

Wisconsin Stat. § 943.32, "Robbery," provides:

(1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class E felony:

(a) By using force against the person of the owner with intent thereby to overcome his or her physical resistance or physical power of resistance to the taking or carrying away of the property; or

(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

(2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon, a device or container described under s. 941.26(4)(a) or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon or such a device or container is guilty of a Class C felony.

[3] The relevant provisions of Wis. Stat. § 941.29, "Possession of a firearm," are as follows:

(1) A person is subject to the requirements and penalties of this section if he or she has been:

(a) Convicted of a felony in this state.

. . . .

§ 939.62(1)(c).[4] The court of appeals concluded that the evidence was more than sufficient for the jury to convict Imani; nevertheless, the court remanded for a new trial on the grounds that the circuit court denied Imani's pretrial motion to represent himself without engaging him in the colloquy required by *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997). The State petitioned this court for review, and we accepted. We now reverse the decision of the court of appeals and uphold Imani's conviction.

(2) A person specified in sub. (1) is guilty of a Class G felony if he or she possesses a firearm under any of the following circumstances:

(a) The person possesses a firearm subsequent to the conviction for the felony or other crime, as specified in sub. (1)(a) or (b).

[4] The relevant provisions of Wis. Stat. § 939.62, "Increased penalty for habitual criminality," state:

(1) If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed, except for an escape under s. 946.42 or a failure to report under s. 946.425, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

. . . .

(c) A maximum term of imprisonment of more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 6 years if the prior conviction was for a felony.

(2) The actor is a repeater if the actor was convicted of a felony during the 5–year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. It is immaterial that sentence was stayed, withheld or suspended, or that the actor was pardoned, unless such pardon was granted on the ground of innocence. In computing the preceding 5–year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

187

¶ 2. The issue in this case is whether the circuit court committed reversible error by denying Imani's motion to represent himself after finding that Imani did not validly waive his right to counsel under two of the four lines of inquiry prescribed in *Klessig* and was not competent to proceed pro se.

¶ 3. We conclude that the circuit court properly denied Imani's motion to represent himself. First, we determine that Imani did not knowingly, intelligently, and voluntarily waive the right to counsel. The circuit court engaged Imani in two of the four lines of inquiry prescribed in *Klessig* and properly determined that Imani (1) did not make a deliberate choice to proceed without counsel, and (2) was unaware of the difficulties and disadvantages of self-representation. If any one of the four conditions prescribed in *Klessig* is not met, the circuit court is required to conclude that the defendant did not validly waive the right to counsel. Second, we conclude that the circuit court's determination that Imani was not competent to proceed pro se is supported by the facts in the record. Because Imani did not validly waive his right to counsel and was not competent to proceed pro se, the circuit court was required to prevent him from representing himself.

## I. FACTUAL BACKGROUND
## AND PROCEDURAL POSTURE

¶ 4. The facts giving rise to Imani's conviction are convoluted and largely irrelevant to this appeal. For our purposes, the evidence at trial demonstrated that on March 1, 2006, Imani and his cousin, Raziga Imani, masked and carrying firearms, entered the Guaranty Bank inside the Pick 'n Save grocery store on Appleton Avenue in Menomonee Falls. The Imanis demanded money from the bank employees and left with a metal

bank box containing in excess of $100,000. With Imani driving, they fled from the scene in a stolen vehicle and were subject to a high-speed pursuit by a Menomonee Falls police officer. Imani eventually lost control of the vehicle and crashed on Hampton Avenue. The Imanis escaped from the vehicle on foot and separated.[5]

¶ 5. Still carrying his firearm, Imani entered the Milwaukee Washing Machine, Inc. store on Appleton Avenue and demanded a ride from the driver of the Buick Riviera parked outside. He told the driver, James Dukes (Dukes), that he had just robbed a bank in Menomonee Falls. Dukes drove Imani to a location about four or five minutes away. A fingerprint lifted from the Buick's passenger's side door handle was later identified as Imani's, and when presented by the police with a range of photographs, Dukes selected Imani as the individual who carjacked him.

¶ 6. On June 20, 2006, Imani was charged with one count of armed robbery, as party to a crime, and one count of possession of a firearm by a felon, both as a repeater. At the preliminary hearing, Dukes again identified Imani as the individual who carjacked him. On July 27, 2007, Imani moved to suppress Dukes' in-court identification of him on the grounds that media coverage of the robbery may have tainted the identification. The circuit court denied Imani's motion at a pretrial hearing on July 31, 2007.

¶ 7. That hearing is at the center of this appeal. After the circuit court denied Imani's motion, Imani informed the court that he would like to represent himself at trial. At that time, he was represented by

---

[5] Raziga Imani was apprehended by police that day and admitted his role in the robbery. Pursuant to a plea agreement, he testified against Imani at Imani's trial.

189

Attorney Joseph Schubert, who by then was the third state public defender appointed to Imani.[6]

¶ 8. Imani reasoned that he did not feel as though his counsel "spoke up enough for [him]" during the motion hearing and that he was "very dissatisfied." In particular, he was upset that his counsel did not play a news broadcast at the hearing in an attempt to jog Dukes' memory, and he argued that his counsel had not yet fully investigated the circumstances surrounding the fingerprint analysis. "[H]aving been through this with about three lawyers," Imani felt as though he could best represent himself at trial:

> So, when it comes to trial I know, like I said before, ain't nobody going to represent myself better than me. I've been dealing with this case for over a year now and I'm pretty sure that I got a fuller defense prepared that I've been preparing myself, you know, with the help of my lawyers, you know. . . .

¶ 9. The circuit court asked Imani how he is going to convince the court that he is competent to represent himself. Imani responded that he had been "working on" his case for 13 months, had completed the tenth grade, could read and write English, and reads at a college level. Imani also stated that he had appeared in court at least five times before in other cases, though admittedly always with counsel:

> The Court: And what experience do you have with the legal system? Have you ever appeared in court besides this case?
>
> Imani: Of course.

---

[6] The record reflects that Imani requested new appointment of counsel at least twice.

The Court: For what kind of matters, criminal matters, or?

Imani: Criminal matters.

The Court: How many times do you think?

Imani: At least maybe, five.

The Court: Have you ever represented yourself in court before?

Imani: No.

The Court: You have always had a lawyer?

Imani: Yes.

¶ 10. Despite those representations, the circuit court denied Imani's motion to represent himself and offered the following explanation:

> While it is not the last minute on the clock we're getting close to a jury trial that requires substantial and extensive preparation. And I'm—because it is a two defendant trial it makes it particularly difficult to get that preparation on track. We not only have to have the State and Defendant, we have two defendants.
>
> And everybody has to be prepared and ready to start the same day at the same time, and keep the case organized together. That means that any potential threat to keeping the schedule is an even bigger issue than it otherwise would be.
>
> . . . .
>
> I also have in mind that Mr. Rashaad Imani has had several lawyers. And while he certainly is entitled to some degree to have the lawyer of his choice and to switch lawyers, that is not an unlimited right. It has to be balanced against proper preparation and conducting of a trial.
>
> The reasons he gives they seem to be episodic

driven, he comes to court today on a motion, he doesn't win the motion and now he is disgruntled. That's in and of itself not a sufficiently rational basis to justify such a decision.

. . . .

I don't know that much about his capability, but he has only got a 10th grade education, he said he reads at a college level, that's the only information I have on the subject of his education and background.

He says he has been to court, but apparently those didn't involve trials, and he didn't represent himself. So while he has some observational experience with the criminal court system, it hasn't been presented to me that he has any experience actually conducting proceedings like a criminal court trial.

So in order to preserve the trial date, maintain the opportunity to be prepared and go forward, and to not make a flippant short term or immature decision go into effect, I'm going to deny it at this point.

¶ 11. The circuit court indicated that it would be willing to hear Imani's motion again. Moreover, with advance notice, the court would consider the possibility of Imani participating in the opening statement, closing argument, and questioning of the witnesses, with Attorney Schubert acting as standby counsel.

¶ 12. Imani never again moved for self-representation, and he proceeded to trial with Attorney Schubert as his counsel. The jury returned guilty verdicts on both counts, and the circuit court entered the judgment of conviction on October 29, 2007.

¶ 13. Imani appealed his conviction on two grounds: the evidence was insufficient to support the jury's guilty verdicts, and the circuit court wrongfully deprived him of his constitutional right to self-

representation because he established a valid waiver of counsel and was competent to represent himself.

¶ 14. On June 3, 2009, the court of appeals reversed the circuit court's judgment of conviction and remanded for a new trial. *State v. Imani*, 2009 WI App 98, ¶ 1, 320 Wis. 2d 505, 771 N.W.2d 379. Despite concluding that the evidence "amply supports the verdicts," *id.*, ¶ 21, the court determined that Imani was entitled to a new trial because the circuit court failed to conduct the waiver-of-counsel colloquy required by *Klessig*, *id.*, ¶ 13. The court disagreed with Imani's assertion that he established a valid waiver of counsel, concluding instead that Imani "could not have established a valid waiver because the trial court failed to engage him in the colloquy *Klessig* requires." *Id.*, ¶ 13.

¶ 15. The court of appeals properly recognized that when a defendant seeks to exercise his or her constitutional right to self-representation, the circuit court must establish that the defendant knowingly, intelligently and voluntarily waived the right to counsel and is competent to proceed pro se. *Id.*, ¶ 14 (citing *Klessig*, 211 Wis. 2d at 203). If the circuit court finds that the defendant met both of those conditions, the court's denial of the defendant's right of self-representation is a structural error subject to automatic reversal. *Id.* (citing *State v. Harvey*, 2002 WI 93, ¶ 37, 254 Wis. 2d 442, 647 N.W.2d 189).

¶ 16. The court of appeals concluded that in this case, the circuit court "did not even touch on" the colloquy required in *Klessig* for the purpose of establishing whether Imani's waiver of counsel was knowing and voluntary. *Id.*, ¶ 15. Moreover, as to competence, the circuit court failed to identify a "specific problem or disability which might significantly affect [Imani's] ability to communicate a meaningful defense." *Id.*,

¶ 17. Instead, the circuit court sacrificed Imani's right to self-representation for an illegitimate concern of preserving the court's schedule. *Id.*, ¶ 18. On those grounds, the court of appeals concluded that Imani was entitled to a new trial.

¶ 17. The State moved for reconsideration, arguing that pursuant to *Klessig*, the proper remedy for a circuit court's failure to conduct the required colloquy is a post-conviction evidentiary hearing, not a new trial. On June 15, 2009, the court of appeals denied the State's motion, reasoning that "[a]lthough a new trial is granted, it is not known if [Imani] will elect self-representation at the new trial and if so, the trial court will have the opportunity to make a proper record on the issue."

¶ 18. The State petitioned this court for review, which we granted on September 24, 2009. We now reverse the decision of the court of appeals and uphold Imani's conviction.

## II. STANDARD OF REVIEW

¶ 19. Whether a defendant was denied his or her constitutional right to self-representation presents a question of constitutional fact, which this court determines independently. *See Klessig*, 211 Wis. 2d at 204; *State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). In order to determine whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel, we apply constitutional principles to the facts of the case. *Klessig*, 211 Wis. 2d at 204. We review those facts independent of the circuit court. *Id.* However, a circuit court's determination that a defendant is incompetent to proceed pro se "will be upheld

unless totally unsupported by the facts." *Pickens v. State*, 96 Wis. 2d 549, 569–70, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d at 206, 212 (expressly "affirm[ing] the holding in *Pickens* as still controlling on the issue of competency"); *see also State v. Marquardt*, 2005 WI 157, ¶ 21, 286 Wis. 2d 204, 705 N.W.2d 878 (quoting *State v. Garfoot*, 207 Wis. 2d 214, 224, 558 N.W.2d 626 (1997)) ("We review a circuit court determination of whether a defendant is competent to proceed pro se under what is 'essentially a clearly erroneous standard of review.' ").

## III. ANALYSIS

¶ 20. Every criminal defendant has a fundamental right to the assistance of counsel, guaranteed by both Article I, Section 7 of the Wisconsin Constitution[7] and the Sixth Amendment of the United States Constitution.[8] *Klessig*, 211 Wis. 2d at 201–02. Equally, a defendant has a constitutional right to represent him-

---

[7] Article I, Section 7 of the Wisconsin Constitution provides:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[8] The Sixth Amendment of the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be con-

self. *Faretta v. California*, 422 U.S. 806, 819 (1975) (holding that the right to self-representation is "necessarily implied by the structure of the [Sixth] Amendment"); *McKaskle v. Wiggins*, 465 U.S. 168, 170 (1984); *Klessig*, 211 Wis. 2d at 203 (recognizing that Article I, Section 7 of the Wisconsin Constitution explicitly establishes a defendant's right to conduct his own defense). "Just as the right to the assistance of counsel is identical under the Wisconsin and United States Constitutions, the right to represent oneself also does not differ." *Klessig*, 211 Wis. 2d at 203.

¶ 21. We, along with the United States Supreme Court, have often recognized the apparent tension between these two constitutional rights. *See Faretta*, 422 U.S. at 832; *Klessig*, 211 Wis. 2d at 203; *Pickens*, 96 Wis. 2d at 556. One cannot "blink[] the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Faretta*, 422 U.S. at 832. The right to counsel is regarded as one of the most significant elements of due process. *Pickens*, 96 Wis. 2d at 555. Save for "some rare instances," "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Faretta*, 422 U.S. at 834.

---

fronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

The Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 342 (1963); *State v. Klessig*, 211 Wis. 2d 194, 202, 564 N.W.2d 716 (1997).

Accordingly, as a prerequisite to a defendant's self-representation, the circuit court must ensure that the defendant (1) has knowingly, intelligently, and voluntarily waived the right to counsel, and (2) is competent to proceed pro se. *Marquardt*, 286 Wis. 2d 204, ¶ 56; *Klessig*, 211 Wis. 2d at 203; *Pickens*, 96 Wis. 2d at 568–69. If the circuit court finds that both conditions are met, the court must permit the defendant to represent himself or herself. *Klessig*, 211 Wis. 2d at 203–04. An improper denial of a defendant's constitutional right to self-representation is a structural error subject to automatic reversal. *Harvey*, 254 Wis. 2d 442, ¶ 37 (citing *Neder v. United States*, 527 U.S. 1, 8 (1999) (citing *McKaskle*, 465 U.S. at 177 n.8.)). On the other hand, if the circuit court finds that either of the two conditions is not satisfied, "the circuit court must prevent the defendant from representing himself or deprive him of his constitutional right to the assistance of counsel." *Klessig*, 211 Wis. 2d at 203–04. We now examine each of the conditions in turn.

A. Knowing, Intelligent, and
Voluntary Waiver of the Right to Counsel.

██ ██

¶ 22. "So important is the right to attorney representation in a criminal proceeding that nonwaiver is presumed." *Pickens*, 96 Wis. 2d at 555; *see also Klessig*, 211 Wis. 2d at 204. The presumption of nonwaiver is overcome only upon an affirmative showing that the defendant knowingly, intelligently, and voluntarily waived the right to counsel. *Klessig*, 211 Wis. 2d at 204. In *Klessig*, this court mandated the circuit court's use of a colloquy in order to prove the defendant's valid waiver. *Id.* at 206. Such an examination on the record assists the circuit court in "establish[ing] that '[the

defendant] knows what he is doing and his choice is made with eyes open.' " *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

¶ 23. Accordingly, to prove a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure the following:

> [T]he defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him. . . .

*Klessig*, 211 Wis. 2d at 206. "If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel." *Id.* Stated differently, a reviewing court may conclude that a defendant knowingly, intelligently, and voluntarily waived the right to counsel only if the circuit court engaged in, and found that the defendant met, the four lines of inquiry prescribed in *Klessig*.

¶ 24. In *Klessig*, the circuit court permitted Klessig to represent himself at trial without first engaging him in a waiver-of-counsel colloquy or inquiring into his competency to proceed pro se. *Id.* at 199. The jury found Klessig guilty of one count of burglary as party to a crime, and he was sentenced to 58 months in prison. *Id.* at 201. Klessig appealed the judgment of conviction, arguing that the circuit court erred by failing to conduct a hearing on whether he validly waived his right to counsel and was competent to proceed pro se. *Id.* In other words, Klessig claimed that the circuit court should not have permitted him to represent himself at

trial. On review, this court mandated the use of the above-stated colloquy as the "clearest and most efficient means of insuring that the defendant has validly waived his right to the assistance of counsel, and of preserving and documenting that valid waiver for purposes of appeal and postconviction motions." *Id.* at 206. We do not depart from *Klessig* today.

¶ 25. The case before us, however, is the converse scenario of *Klessig*. Unlike Klessig, Imani did not proceed to trial without counsel. The circuit court found that Imani did not meet the four conditions required by *Klessig* in order to validly waive his right to counsel. The circuit court denied Imani's motion to represent himself, he proceeded to a jury trial with counsel and was found guilty, and he is now appealing the judgment of conviction on the grounds that the circuit court deprived him of his constitutional right to self-representation by not engaging him in the colloquy required by *Klessig*.

██ ██

¶ 26. We disagree. We conclude that Imani was not deprived of his constitutional right to self-representation because the circuit court properly determined that Imani did not validly waive his right to counsel under *Klessig*. We are cognizant of the fact that the circuit court did not engage Imani in the full colloquy prescribed in *Klessig* and did not utilize the exact language or "magic words" of *Klessig* when conducting its colloquy. The circuit court's inquiry could have been better. Nevertheless, it is evident from the record that the circuit court engaged Imani in two of the four lines of inquiry prescribed in *Klessig*: whether Imani made a deliberate choice to proceed without counsel and whether Imani was aware of the difficulties

and disadvantages of self-representation.[9] Because we answer both in the negative, it necessarily follows that Imani did not validly waive his right to counsel. Even had the circuit court engaged him further, the answer would have been the same. Under *Klessig*, as long as the circuit court finds that one of the four conditions is not met, the court cannot permit the defendant to represent himself. We do not impose on circuit courts the requirement of placing form over substance and using "magic words" when the reality of the circumstances dictate the answer.

### 1. Whether Imani made a deliberate choice to proceed without counsel

¶ 27. The circuit court's explanation for denying Imani's motion to represent himself makes apparent that the court could not find that Imani deliberately chose to proceed without counsel. According to the circuit court, Imani's decision to represent himself was "flippant," "short term," and "immature." The reasons he gave did not reflect a deliberate choice but instead were "episodic driven." Specifically, the circuit court found that Imani was "disgruntled" about losing his motion to suppress Dukes' in-court identification of him, and that "in and of itself [was] not a sufficiently rational basis to justify" his decision to represent himself. We agree.

¶ 28. The record reflects that Imani did not make a deliberate choice to proceed without counsel. Rather, he made a hasty request on the heels of an unsuccessful

---

[9] In its petition for review, the State did not challenge the court of appeals' conclusion that the circuit court failed to engage Imani in the colloquy required by *Klessig*. However, we need not accept a party's concession of law. *Bergmann v. McCaughtry*, 211 Wis. 2d 1, 7, 564 N.W.2d 712 (1997).

motion hearing. Imani's immediate reason for wanting to represent himself was his belief that his counsel did not "sp[eak] up enough for [him] during [that] proceeding." He was particularly upset that his counsel did not play a news broadcast at the hearing, and he "wasn't satisfied with the questions that [his counsel] asked Mr. Dukes." Imani stated, "If [my counsel], you know, doing this type of job here then I know at trial I don't—I don't feel as though he is going to represent me well enough." It is clear that Imani did not make a deliberate choice to represent himself. Instead, he impulsively moved for self-representation as a result of his aggravation towards counsel and the fact that he did not prevail on the motion to suppress.

¶ 29. Moreover, the record indicates that despite the circuit court's invitation, Imani never before and never again expressed a desire to represent himself. To the contrary, in this case alone, he was assisted at various times by four different attorneys, and he twice expressly requested new appointment of counsel. He never took the circuit court up on its offer to hear his motion for self-representation again or to permit him to participate at trial with standby counsel. In fact, Imani's decision to represent himself at trial was evidently conditioned upon the assistance of counsel, and thus, he may not have truly sought to waive counsel in the first instance.[10] Specifically, in his "heat of the moment" argument, he informed the circuit court that he "[did not] have any problem with" the trial being scheduled for the next month "as long as [his] lawyer will make a full investigation into the fingerprint."

---

[10] "[A] defendant has no constitutional right to be actively represented in the courtroom both by counsel and by himself." *Moore v. State*, 83 Wis. 2d 285, 300, 265 N.W.2d 540 (1978).

¶ 30. We therefore agree with the circuit court's finding that Imani's choice to proceed without counsel, if it even was that, was not deliberate but instead was "episodic driven." The record reflects that he made a hasty request on the heels of an unsuccessful motion hearing and never again expressed a sincere desire to be without the assistance of counsel—until he was convicted.

2. Whether Imani was aware of the difficulties and disadvantages of self-representation

¶ 31. Without using the "magic words," the circuit court also engaged Imani in a colloquy concerning the difficulties and disadvantages of self-representation. The court twice mentioned the added difficulty in preparing for and conducting a two-defendant jury trial. The court also noted the "complicated and messy" nature of self-representation and how it "is almost always the wrong tactical move" because "it is confusing as to when you're speaking as yourself and when you're speaking on behalf of yourself."

¶ 32. Based upon our review of the record, the circuit court correctly determined that Imani was unaware of the difficulties and disadvantages of self-representation. By his own contention, his success at trial was conditioned upon the assistance of counsel. As he indicated to the circuit court, he was "pretty sure" that he had a "fuller defense prepared that [he had] been preparing [him]self, you know, with the help of [his] lawyers." In addition, as previously mentioned, he told the court that he would be ready to represent himself at trial "as long as [his] lawyer will make a full

investigation into the fingerprint." Relying as he did on the assistance of counsel, we cannot conclude that Imani appreciated the difficulties and disadvantages of self-representation, even if we presume that he truly meant to waive his right to counsel.

¶ 33. In summary, we conclude that even though the circuit court could have engaged in a more thorough colloquy, it correctly determined that Imani did not validly waive his right to counsel under *Klessig*. The circuit court engaged Imani in two of the four lines of inquiry prescribed in *Klessig* and properly determined that Imani (1) did not make a deliberate choice to proceed without counsel, and (2) was unaware of the difficulties and disadvantages of self-representation. Regardless of how Imani may have answered the other two lines of inquiry, the circuit court could not have accepted his waiver of counsel as valid. Under *Klessig*, if any one of the four conditions is not met, the circuit court is required to conclude that the defendant did not validly waive the right to counsel.

¶ 34. Today we uphold *Klessig* as the controlling authority for determining whether a defendant validly waived the right to counsel and the preferred method for a circuit court to engage in such a colloquy. The use of the *Klessig* colloquy is mandated "in every case where a defendant seeks to proceed pro se *to prove knowing and voluntary waiver of the right to counsel.*" *Klessig*, 211 Wis. 2d at 206 (emphasis added). If the circuit court fails to engage a defendant in the four lines of inquiry as prescribed in *Klessig*, "a reviewing court may not find, based on the record, that there was *a valid waiver of counsel.*" *Id.* (emphasis added). In a case such as this one, however, where the circuit court determined that two of the four lines of inquiry were not satisfied, the circuit court did not commit automatic error requiring

a new trial because the defendant could not have validly waived his right to counsel. It makes little practical sense to fault the circuit court for not engaging Imani in the full colloquy; if any one of the four conditions was not met, the circuit court was required to conclude that Imani did not validly waive his right to counsel.[11]

---

[11] The concurrence/dissent accuses the court of "effectively overrul[ing]" *Klessig*, warning that under our reasoning, circuit courts are "no longer required to engage a defendant seeking to proceed pro se in a full and complete *Klessig* colloquy." Concurrence/dissent, ¶ 48. We reject the concurrence/dissent's mischaracterization of our holding. We uphold *Klessig* as the controlling authority for *proving a defendant's knowing and voluntary waiver of the right to counsel.* This case, however, is the converse scenario of *Klessig*—a fact that the concurrence/dissent declines to acknowledge. In this case, the circuit court determined that Imani *did not* validly waive the right to counsel. Logic commands that when a series of elements is stated in the conjunctive, as is the case in *Klessig, see* 211 Wis. 2d at 206, thereby requiring a finding of each element in order to prove the conclusion, disproving the conclusion requires only one element to fail. The Wisconsin Jury Instructions, cited by the concurrence/dissent at ¶ 55 n.7, make this point clear:

> Denial of a waiver of counsel must be supported by *one* of the following findings: (1) that the defendant does not understandingly and voluntarily waive counsel; (2) that the defendant does not understand the disadvantages of self-representation; or (3) that the defendant lacks the minimal competence necessary to try to represent himself or herself.

Wis JI—Criminal SM-30 at 6 (emphasis added). Thus, if the circuit court makes *any one* of the following findings, the court is required to deny the defendant's waiver of counsel:

> -the defendant does not understand the seriousness of the charge and the maximum possible penalties; *or*

> -the defendant does not understand that a lawyer may be of assistance and that a lawyer may be appointed if the defendant is indigent; *or*

204

██

¶ 35. Nevertheless, we strongly caution circuit courts that the preferred practice is to engage every defendant who seeks to proceed pro se in the full colloquy prescribed in *Klessig*, even if the court determines that a defendant did not validly waive the right to counsel. Even in those cases, a complete examination on the record is the "clearest and most efficient means" of ensuring that the defendant did not validly waive the right to counsel and of "preserving and documenting" that invalid waiver for purposes of appeal. *See id.*

### B. Competence to Proceed Pro Se

██

¶ 36. In addition to knowingly, intelligently, and voluntarily waiving the right to counsel, a defendant who seeks to represent himself or herself must be competent to proceed pro se. *Klessig*, 211 Wis. 2d at 203; *Pickens*, 96 Wis. 2d at 567. Determining whether a defendant is competent to proceed pro se is a higher standard than determining whether a defendant is competent to stand trial. *Klessig*, 211 Wis. 2d at 212. "Surely a defendant who, while mentally competent to be tried, is simply incapable of effective communication or, because of less than average intellectual powers, is unable to attain the minimal understanding necessary to present a defense, is not to be allowed 'to go to jail under his own banner.' " *Pickens*, 96 Wis. 2d at 568

-the defendant does not understand the disadvantages of self-representation; *or*

-the defendant does not possess the minimal competence necessary to try to represent himself or herself . . . .

*Id.* at 7 (emphasis added). Again, we decline to place form over substance when logic commands the answer.

(quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965)).

¶ 37. Whether a defendant is competent to proceed pro se is "uniquely a question for the trial court to determine." *Pickens*, 96 Wis. 2d at 568. "It is the trial judge who is in the best position to observe the defendant, his conduct and his demeanor and to evaluate his ability to present at least a meaningful defense." *Id.* In determining whether a defendant is competent to proceed pro se, the circuit court may consider the defendant's education, literacy, language fluency, and any physical or psychological disability which may significantly affect his ability to present a defense. *Id.* at 569. A defendant of average ability and intelligence may still be adjudged competent for self-representation, and accordingly, a defendant's "timely and proper request" should be denied only where the circuit court can identify a specific problem or disability that may prevent the defendant from providing a meaningful defense. *Id.* While the determination of competency rests significantly upon the circuit court's judgment and experience, the determination must appear in the record. *Klessig*, 211 Wis. 2d at 212. Our review is limited to whether the circuit court's determination is "totally unsupported by the facts apparent in the record." *Pickens*, 96 Wis. 2d at 569–70.

¶ 38. In this case, we conclude that the circuit court's determination that Imani was not competent to proceed pro se is also supported by the facts in the record. The circuit court inquired into Imani's level of education, his ability to read and write, and his experience with the legal system. Imani possessed only a tenth grade education and asserted, without more, that

he read at a college level. As the circuit court correctly observed, Imani's experience with the criminal court system was "observational," as his court appearances always included the assistance of counsel. Considering all those factors, the circuit court determined that Imani did not possess the minimal competence necessary to conduct his own defense. We cannot conclude that the circuit court's determination is "totally unsupported" by the record. *Id.*

¶ 39. Moreover, contrary to the court of appeals' conclusion, it was not error for the circuit court to take into consideration the trial schedule when determining whether Imani was competent to proceed pro se. *See Imani*, 320 Wis. 2d 505, ¶ 18. In *Pickens*, which we regard as the controlling authority on competency, *Klessig*, 211 Wis. 2d at 212, this court recognized that a "*timely* and proper request" to proceed pro se should be denied only where the circuit court can identify a specific problem or disability that may prevent the defendant from providing a meaningful defense. *Pickens*, 96 Wis. 2d at 569 (emphasis added). Accordingly, the circuit court was justified in taking into consideration the timing of Imani's motion to represent himself and the fact that it was first presented to the court less than one month before a two-defendant jury trial that required "substantial and extensive preparation."

## IV. CONCLUSION

¶ 40. We conclude that the circuit court properly denied Imani's motion to represent himself. First, we determine that Imani did not knowingly, intelligently, and voluntarily waive the right to counsel. The circuit court engaged Imani in two of the four lines of inquiry prescribed in Klessig and properly determined that

Imani (1) did not make a deliberate choice to proceed without counsel, and (2) was unaware of the difficulties and disadvantages of self-representation. If any one of the four conditions prescribed in Klessig is not met, the circuit court is required to conclude that the defendant did not validly waive the right to counsel. Second, we conclude that the circuit court's determination that Imani was not competent to proceed pro se is supported by the facts in the record. Because Imani did not validly waive his right to counsel and was not competent to proceed pro se, the circuit court was required to prevent him from representing himself.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 41. N. PATRICK CROOKS, J. *(concurring in part, dissenting in part)*. When this court accepted review of this case, the issue that the parties presented was straightforward: When a defendant seeks to waive the assistance of counsel, and the circuit court fails to engage him or her in the colloquy mandated by *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997), is the proper remedy a new trial or a retrospective evidentiary hearing? Rather than answer that question, the majority rewrites the issue and, as a result, effectively dismantles *Klessig*'s useful and clear bright-line rule.

¶ 42. There is no dispute that the circuit court's handling of Rashaad Imani's request to waive counsel was somewhat flawed. All of the justices of this court,[1]

---

[1] *See* majority op., ¶ 26 ("We are cognizant of the fact that the circuit court did not engage Imani in the full colloquy prescribed in *Klessig* . . . . The circuit court's inquiry could have been better."); ¶ 33 ("[T]he circuit court could have engaged in a more thorough colloquy[.]").

208

the panel of the court of appeals,[2] and the parties[3] recognize that the circuit court did not engage in the full, mandated *Klessig* colloquy needed to ensure protection of Imani's right to counsel and right to represent himself under the Wisconsin and the United States constitutions.

¶ 43. What is at issue here is the correct remedy for the circuit court's defective colloquy. In my view, the correct remedy is not a new trial, as the court of appeals held and as Imani argues. Nor is the correct remedy for four justices of this court, in effect, to overrule sua sponte what has been a clear, useful, bright-line rule in *Klessig*. Rather, in response to the only question that the parties asked us to answer, *Klessig* counsels that the proper remedy under these circumstances is a retrospective evidentiary hearing to determine whether Imani's waiver of counsel was knowing, intelligent, and voluntary. *See Klessig*, 211 Wis. 2d at 207 (concluding that, where the circuit court failed to conduct a colloquy to determine knowing and intelligent waiver of assistance of counsel, a remand for an evidentiary hearing is the appropriate remedy).

¶ 44. Because I believe that the court of appeals erred when it determined that the proper remedy for a defective *Klessig* colloquy is a new trial, I concur with the majority's holding to the extent that it reverses the court of appeals' remand for a new trial. However, I strongly disagree with the majority's failure to remand for a retrospective evidentiary hearing. Instead, I would

---

[2] *See State v. Imani*, 2009 WI App 98, ¶ 15, 320 Wis. 2d 505, 771 N.W.2d 379 (stating that the circuit court "did not even touch on" the questions mandated by *Klessig*).

[3] *See infra* ¶¶ 45–47 (describing the parties' statements of the issue as presented to this court and their acknowledgement that the circuit court's *Klessig* colloquy was deficient).

209

reverse the court of appeals, and remand to the circuit court for the required retrospective evidentiary hearing in accord with *Klessig*.

¶ 45. A brief review of how this case came to this court is helpful. After the court of appeals reversed Imani's convictions and remanded for a new trial, the State sought reconsideration by the court of appeals. The court of appeals denied reconsideration and the State petitioned this court for review. Significantly, it asked:

> Did the court of appeals impose the *wrong remedy*, contrary to this Court's decision in [*Klessig*], when it ordered this case remanded for a new trial instead of a retrospective evidentiary hearing after finding that the circuit court failed to conduct the colloquy concerning self-representation required by *Klessig*?

(Emphasis added.) Imani's response to the petition for review did not challenge that statement of the issue. Moreover, when we granted review, our order did not seek briefing or arguments relating to any other issues connected with the case.

¶ 46. Accordingly, in its opening brief to this court, the State restated the issue virtually identically to the issue it presented in its petition for review.[4] In response, Imani stated that he agreed "with the State that the issue presented for review is whether the court of appeals imposed the wrong remedy, contrary to *State v. Klessig*, when it ordered the case remanded for a new trial."

---

[4] The only difference was that the State, in its opening brief, described the remedy as a "retrospective hearing" rather than as a "retrospective evidentiary hearing" as it did in its petition for review.

210

¶ 47. Simply put, the parties agreed—as did we, when we accepted this petition for review—that the issue concerned what the proper remedy is when a circuit court fails to engage in a proper *Klessig* colloquy. Given that, the majority's statement of the issue is surprising:

> The issue in this case is whether the circuit court committed reversible error by denying Imani's motion to represent himself after finding that Imani did not validly waive his right to counsel under two of the four lines of inquiry prescribed in *Klessig* and was not competent to proceed pro se.

Majority op., ¶ 2.

¶ 48. In other words, the majority ignores the remedy issue, and reaches out to create and decide a new issue: Whether the circuit court got it "close enough" in its very limited inquiry. The parties did not present that issue to us in their briefs or oral arguments.[5] Worse, the majority's reformulation effectively overrules the clear, useful bright-line rule in *Klessig* requiring circuit courts to conduct a full and complete colloquy with all defendants seeking to waive assistance of counsel. The majority states, "Today we uphold *Klessig* as the controlling authority for determining whether a defendant validly waived the right to counsel and the preferred method for a circuit court to engage in such a colloquy." Majority op., ¶ 34. How can that

---

[5] In fact, when asked at oral argument whether *Klessig* should be overruled so as to no longer require a colloquy, the assistant attorney general appearing for the State remarked that he had not "really delved into it," and was not prepared to discuss the question in detail. He also noted that, if this court were to consider overruling *Klessig'*, the State would want to weigh in on the issue.

statement possibly be accurate, given the majority's reasoning and approach? Unfortunately, the majority's reasoning leads to but one conclusion: A circuit court is no longer required to engage a defendant seeking to proceed pro se in a full and complete *Klessig* colloquy.

¶ 49. To understand why *Klessig*'s requirement of a full colloquy is important, a discussion of that case and similar cases is necessary and instructive. In *Klessig*, this court explained that when a defendant in a criminal case requests self-representation, that request implicates two important, yet competing constitutional rights, each guaranteed by Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment to the United States Constitution: the right to the assistance of counsel and the right to self-representation. *See Klessig*, 211 Wis. 2d at 201–04.

¶ 50. We discussed those competing rights in a case that predated *Klessig, Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), *overruled in part by Klessig*, 211 Wis. 2d at 206. In *Pickens*, we explained, "So important is the right to attorney representation in a criminal proceeding that nonwaiver is presumed and waiver must be affirmatively shown to be knowing and voluntary in order for it to be valid." 96 Wis. 2d at 555 (citing *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948); *Keller v. State*, 75 Wis. 2d 502, 508–09, 249 N.W.2d 773 (1977)). Yet, in light of the constitutional right to self-representation, "the trial court must also be cognizant and respectful of the defendant's right to conduct his own defense without the benefit of an attorney." *Id.* at 556 (citing *Faretta v. California*, 422 U.S. 806 (1975)). Accordingly, the court in *Pickens*, after reviewing cases dealing with the waiver of counsel, held that when a defendant wishes to proceed pro se, the circuit court must ensure two things: first, that the defendant has

knowingly, intelligently, and voluntarily waived the right to counsel, and second, that the defendant is competent to proceed pro se. 96 Wis. 2d at 568–69.

¶ 51. As to the first part of that inquiry, for waiver to be valid, the court must be satisfied that the following four factors are present: (1) the defendant made a deliberate choice to proceed without counsel, (2) the defendant is aware of the disadvantages and difficulties of self-representation, (3) the defendant is aware of the seriousness of the charges that he or she is facing, and (4) the defendant is aware of the general range of penalties that could be imposed if he or she is found guilty. *Id.* at 563. However, in *Pickens* we did not require expressly that a circuit court engage in a colloquy to determine whether those four factors were present. Rather, we permitted the record to "reflect" the four factors and a reviewing court to determine that a waiver was valid or not based on a review of the record. *See id.* at 564.

¶ 52. In *Klessig*, we upheld *Pickens* to the extent that a circuit court must determine that the four *Pickens* factors are present in order to uphold a determination that there was a knowing, intelligent, and voluntary waiver. However, we overruled *Pickens* to the extent that it permitted the colloquy to be optional. Instead, as we wrote, "[W]e mandate the use of a colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel." *Klessig*, 211 Wis. 2d at 206.

¶ 53. We further explained the benefits of that approach:

Conducting such an examination of the defendant is the clearest and most efficient means of insuring that the defendant has validly waived his right to the assistance of counsel, and of preserving and document-

213

ing that valid waiver for purposes of appeal and postconviction motions. *Thus, a properly conducted colloquy serves the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources.*

*Id.* (emphasis added). In other words, requiring a colloquy is beneficial in several ways.

¶ 54. First, it protects a defendant's constitutional right to the assistance of counsel and the right to self-representation by ensuring and clarifying the defendant's understanding of the request to waive his or her right to the assistance of counsel. *See id.* Similar to other situations where the circuit court must conduct a colloquy to ensure a defendant's knowing, intelligent, and voluntary waiver of a right,[6] the purpose of engaging a defendant in a discussion touching upon the four interrelated *Pickens* factors enables the defendant to be aware of his or her rights, to understand the gravity of the offense, and to recognize the advantages and disadvantages of self-representation. The Wisconsin Jury Instructions—Criminal Special Materials 30 supports that understanding that the colloquy is as much for the defendant's benefit as it is for the benefit of the circuit court. Those instructions in the special

---

[6] *Cf., e.g., State v. Weed,* 2003 WI 85, ¶¶ 40–43, 263 Wis. 2d 434, 666 N.W.2d 485 (holding that, consistent with *Anderson* and *Klessig,* a colloquy is required where a defendant waives the right to testify); *State v. Anderson,* 2002 WI 7, ¶ 23, 249 Wis. 2d 586, 638 N.W.2d 301 (mandating a colloquy where a defendant seeks waiver of a jury trial because it "is the clearest means of determining that the defendant is knowingly, intelligently, and voluntarily waiving his right to a jury trial"); *State v. Bangert,* 131 Wis. 2d 246, 260–61, 389 N.W.2d 12 (1986) (requiring a colloquy "to assist the trial court in making the constitutionally required determination that a defendant's plea is voluntary").

materials provide a detailed series of suggested inquiries to engage in with the defendant, and then instruct the circuit court to ask the defendant if, after having engaged in the full colloquy, he or she continues to seek waiver of counsel. Wis JI—Criminal SM-30 at 5. In other words, along with allowing the circuit court to discern whether the defendant is making a knowing, intelligent, and voluntary choice, engaging in the full colloquy allows the defendant to understand the full import and ramifications of his or her choice.

¶ 55. Second, it encourages judicial efficiency in two primary ways. As an initial matter, it provides a clear practice for a circuit court to follow when confronted with a request to waive counsel and proceed pro se. That practice, as set forth in the Wisconsin Jury Instructions,[7] enables circuit courts to give requests to

---

[7] Based in part on *Klessig*, the Wisconsin Jury Instructions —Criminal SM-30 set forth the recommended practice. The instructions explain that:

> [w]hen a defendant affirmatively wishes to waive counsel, an inquiry must be conducted to determine whether the defendant's waiver is voluntarily and understandingly made. This includes assuring that the defendant understands the benefits of being represented by counsel and the disadvantages of proceeding without counsel.

Wis JI—Criminal SM-30 at 2. The instructions then provide a suggested inquiry that delves into all four *Pickens* factors. If, after engaging in that colloquy, the defendant changes his or her mind and desires representation by counsel, the instructions indicate that the circuit court should either allow the defendant to seek private counsel or refer the case to the public defender's office. *Id.* at 5. However, if after receiving the full colloquy, the defendant still wishes to waive counsel, the instructions prompt the court to then conduct the competence inquiry. *Id.*

The instructions go on to explain, consistently with *Klessig*, that a circuit court's decision to deny waiver of counsel must be supported by at least one of the following findings:

waive counsel the attention warranted in an efficient, streamlined manner.

¶ 56. Additionally, the full and complete colloquy encourages appellate judicial efficiency. *See Klessig*, 211 Wis. 2d at 206; see also *State v. Ernst*, 2005 WI 107, ¶ 50, 283 Wis. 2d 300, 699 N.W.2d 92 (Wilcox, J., concurring in part & dissenting in part). If the circuit court conducts the full and complete colloquy, the circuit court has developed the record easily for an appellate or post-conviction court to review the circuit court's decision. quickly and efficiently. On the other hand, if the circuit court fails to conduct a full and complete colloquy, the case is remanded for a retrospective evidentiary hearing that develops the record for further review. In any event, requiring the full and complete colloquy at the circuit court level promotes efficient reviews at the post-conviction and appellate court levels.

¶ 57. In summary, a full and complete colloquy serves multiple purposes: (1) ensuring that the defendant understands and validly waives his or her right to counsel, (2) ensuring that the defendant's right to self-representation is protected, and (3) encouraging judicial efficiency by giving circuit courts clear direction and promoting a well-developed record for speedy appellate review.

¶ 58. Here, the majority's view that a partial colloquy could be sufficient essentially overrules *Klessig* and fails to serve the purposes advanced by a full

---

(1) That the defendant does not understandingly and voluntarily waive counsel; (2) that the defendant does not understand the disadvantages of self-representation; or (3) that the defendant lacks the minimal competence necessary to try to represent himself or herself.

*Id.* at 6.

and complete colloquy. A circuit court exploring only two of the four *Pickens* factors cannot be said to have reached a determination that sufficiently protects a defendant's dual but conflicting constitutional rights to the assistance of counsel or to self-representation. Moreover, a partial colloquy may not provide a defendant with enough information to make a decision that is a knowing, intelligent, and voluntary one. *See* Wis JI—Criminal SM-30 at 5 (instructing the circuit court to ask a defendant, after conducting the full colloquy, whether he or she continues to seek waiver of the right to the assistance of counsel). Further, a partial colloquy eliminates helpful guidance for circuit courts from *Klessig* and the Special Materials, and is likely to bog down post-conviction and appellate review of such cases.

¶ 59. Along with the majority's holding, which in effect overrules *Klessig*'s mandate that the circuit court conduct a full and complete colloquy in every case where a defendant seeks waiver of the assistance of counsel and self-representation, several other problems arise from the majority's restatement of the issue.

¶ 60. First, to sidestep the fact that the circuit court failed to engage in the full and complete colloquy as mandated by *Klessig*, the majority appears, at least at times, to shift the responsibility to the defendant to present evidence supporting the four *Pickens* factors as well as showing his competence. *See* majority op., ¶ 15 ("If the circuit court finds *that the defendant met* both of those conditions . . . "); ¶ 23 ("[A] reviewing court may conclude that a defendant knowingly, intelligently, and voluntarily waived the right to counsel only if the circuit court engaged in, and found that the defendant met, the four lines of inquiry prescribed in *Klessig*."); ¶ 25 ("The circuit court found that *Imani did not meet*

the four conditions required by *Klessig* in order to validly waive his right to counsel."); ¶ 28 ("The *record reflects that Imani did not make a deliberate choice* to proceed without counsel.") (emphases added).[8]

¶ 61. The language in *Klessig* is consistent in stating that it is *the circuit court's* responsibility to elicit evidence and determine whether that evidence supports the four *Pickens* factors. *See, e.g., Klessig,* 211 Wis. 2d at 206 ("To prove such a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him."). Indeed, the commentary to the Wis JI-Criminal SM-30 indicates "the trial court must . . . make the required

---

[8] Moreover, the majority does not take issue with the approach of the circuit court, to the extent that it made several comments suggesting that, in its view, the burden was Imani's:

> THE COURT: *What do you want to say to me to convince me* that you're competent to represent yourself?
>
> IMANI: Like I say I've been working on this for 13 months, you know, I'm very competent.
>
> THE COURT: Those are really kind of irrelevant and unconvincing.
>
> . . . . .
>
> THE COURT: I don't know that much about his capability, but he has only got a 10th grade education, he said he reads at a college level, that's the only information I have on the subject of his education and background. . . . *[I]t hasn't been presented to me* that he has any experience actually conducting proceedings like a criminal court trial.

(Emphases added.)

inquiry and make proper findings," SM-30 at 2, and that "the burden is on the court to make a record," *id.* at 7.

¶ 62. In other words, the purpose of the circuit court's colloquy is to develop a record on which the court bases its determination that the defendant's waiver is or is not valid. If there is no such record, the circuit court cannot make a determination as to the validity of the waiver. To the extent that the majority suggests it is up to the defendant to present a case for why his or her waiver is valid, it is wrong. Here, the circuit court did not engage in the full and complete colloquy required, nor did that court make the required determinations supporting its holding that Imani's waiver of assistance of counsel was invalid.

¶ 63. Second, the majority ignores precedent. The United States Supreme Court has held that denial of self-representation at trial is a structural error that is not subject to harmless-error analysis. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984). Many constitutional errors are subject to the harmless-error rule. However, as we have noted, "certain fundamental constitutional errors are not amenable to harmless error analysis," but rather require automatic reversal. *State v. Harvey*, 2002 WI 93, ¶ 37, 254 Wis. 2d 442, 647 N.W.2d 189. These "structural" errors are "so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)). Errors are structural when they "contain a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Harvey*, 254 Wis. 2d 442, ¶ 37 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). As we have observed, the United States Supreme Court has held that denial of self-representation

at trial is a structural error that is not subject to harmless-error analysis. *Harvey*, 254 Wis. 2d 442, ¶ 37 (citing *McKaskle*, 465 U.S. at 177 n.8).

¶ 64. The majority correctly acknowledges that the improper denial of a defendant's request for self-representation "is a structural error subject to automatic reversal." Majority op., ¶ 15. But it then goes on to state that it upholds "*Klessig* as the controlling authority for determining whether a defendant validly waived the right to counsel" and that "[t]he use of the *Klessig* colloquy is mandated 'in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel.' " Majority op., ¶ 34. Reading those statements together, the majority seems to be saying that the failure to engage in the mandated colloquy is a structural error prompting automatic reversal.

¶ 65. However, the majority then appears to go on to assess the circuit court's failure to engage in the full and complete *Klessig* colloquy to prove a knowing, intelligent, and voluntary waiver of the right to counsel, not as a structural error requiring reversal or a retrospective evidentiary hearing, but as a harmless error. It bases that approach on its conclusion that the circuit court here had garnered enough information on two of the four points of inquiry to deny Imani's request. *See* majority op., ¶ 34. Yet it somehow maintains that the circuit court would have been required to engage in the full and complete *Klessig* colloquy only if it had determined, based on that colloquy, that Imani's waiver of the right to counsel was knowing, intelligent, and voluntary. *See* majority op., ¶ 34 ("If the circuit court fails to engage a defendant in the four lines of inquiry as prescribed in *Klessig*, 'a reviewing court may not find, based on the record, that there was a valid waiver of

counsel.' "). As an initial matter, that result-driven approach puts the cart before the horse. The full and complete *Klessig* colloquy is designed to allow the court to determine whether the defendant's waiver is knowing, intelligent, and voluntary. By the majority's circular reasoning, the determination of whether a court is required to engage in the full and complete colloquy is based on the result that the full and complete colloquy is designed to reach.

¶ 66. Moreover, that approach appears to treat the improper denial of the right to waiver of assistance of counsel as a structural error, but the improper denial of the right to self-representation as a harmless one. For example, by the majority's reasoning, a defendant challenging a circuit court's grant of his motion to waive assistance of counsel, where the circuit court failed to engage him in the full and complete *Klessig* colloquy, would appear to be entitled to automatic reversal and remand. In that situation, the court's error implicates the defendant's constitutional right to the assistance of counsel. However, in a situation such as this one, where the circuit court fails to engage in the full and complete colloquy and denies the defendant's motion to waive the assistance of counsel, potentially implicating that defendant's right to self-representation, by the majority's reasoning that defendant is not automatically entitled to reversal and remand, or at least to a retrospective evidentiary hearing on remand. Rather, an appellate court may simply review the record and treat the circuit court's error as a harmless error. As explained herein, that approach is contrary to the *McKaskle* decision holding that denial of the right to self-representation is a structural error not subject to the harmless error analysis. 465 U.S. at 177 n.8.

¶ 67. *Klessig* makes no such distinction between the two competing constitutional rights, nor am I aware of any other case that does. Rather, *Klessig* sets a bright-line rule requiring a full and complete colloquy touching upon the four *Pickens* factors when an accused requests self-representation. It does not endorse a partial or incomplete colloquy based on whether the circuit court denies the defendant's request to waive the assistance of counsel, and thus for self-representation.

¶ 68. Moreover, to the extent that this court, rather than the circuit court at a retrospective evidentiary hearing, can look to the record for evidence supporting the circuit court's determination that Imani's waiver was invalid, I disagree with the majority's conclusions that the record contains evidence supporting a determination (1) that Imani's waiver was not deliberate, (2) that he was not aware of the difficulties and disadvantages of self-representation, or (3) that Imani was incompetent to represent himself.

¶ 69. As an initial matter, the majority seems to give no weight to Imani's statements that (1) he had been "working on" his case for 13 months, (2) he was dissatisfied with counsel's failure to challenge particular evidence or to complete tasks that he allegedly told Imani that he would complete, and (3) because of those perceived inadequacies, Imani felt that he could represent himself better at that point in the proceedings. Instead, it emphasizes the circuit court's language opining, without the full and complete colloquy, that Imani's decision to represent himself was not deliberate because his decision was "immature," "flippant," and "episodic driven."

¶ 70. Without the colloquy, as required by *Klessig*, such statements are not sufficient to support the denial of a waiver of counsel. As the Special Materials state,

"Denial of a waiver of counsel must be supported by one of the following findings: (1) that the defendant does not understandingly and voluntarily waive counsel; (2) that the defendant does not understand the disadvantages of self-representation; or (3) that the defendant lacks the minimal competence necessary to try to represent himself or herself." Wis JI—Criminal SM-30 at 6. Here, even if Imani's request was "flippant" or "episodic-driven," it is not necessarily a non-deliberate choice. Rather, the language cited reflects the circuit court's opinion that Imani was making a foolish choice by waiving counsel. Many courts, when confronted with a criminal defendant's request to waive counsel, might believe that that defendant is making a poor choice. However, such a belief, by itself, is not sufficient to support a finding that a defendant's decision is not deliberate.

¶ 71. Next, the majority concludes that Imani, by his own admission, did not understand the difficulties and disadvantages of self-representation, based on comments that Imani made when he acknowledged that counsel had assisted him to some degree and that he recognized that there were parts of his defense on which it would be helpful to have counsel. Such statements could reasonably be read to support the conclusion that Imani appreciates the difficulties and disadvantages of self-representation.

¶ 72. Finally, the majority's conclusion that the information presented to the circuit court supports the circuit court's conclusion that Imani was not competent to represent himself is inconsistent with *Pickens* and *Faretta* and the factors discussed in those cases. Although the majority correctly states the standard of review, as set forth in *Pickens*, that a court's determination that a defendant is or is not competent to

223

represent himself "will be upheld unless totally unsupported by the facts apparent in the record," 96 Wis. 2d at 569–70, it ignores the framework within which the circuit court is to apply those facts in the record. As we stated in *Pickens*, a court evaluating a defendant's request to waive counsel must inquire into factors including education, English-language fluency, literacy, "and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury." *Id.* at 569. We went on to state:

> However, since *Faretta* indicates that persons of average ability and intelligence are entitled to represent themselves, *a timely and proper request should be denied only where a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.*

*Id.* (emphasis added).

¶ 73. Here, there was no specific determination by the circuit court that Imani had a disability or problem that would prevent him from presenting a meaningful defense, nor is there evidence in the record that could support such a determination. Accordingly, the majority's conclusion is at odds with the factors discussed in *Pickens*, which the circuit court should consider in order "to determine whether [the defendant] possesses the minimal competence necessary to conduct his own defense." 96 Wis. 2d at 569. The majority invokes the following facts as support for its conclusion that Imani is not competent to represent himself: he has a tenth-grade education, he reads at a college level, he has command of written and spoken English, and he has participated in five other proceedings as a defendant. Again, we emphasized in *Pickens* that persons of average intelligence and ability are

entitled to represent themselves. Here, Imani's education, reading level, fluency, and courtroom experience[9] seem to offer support for the conclusion that he is competent to represent himself rather than support for the majority's view that he is not competent. Indeed, the majority appears to be basing its decision on an amorphous standard of competence. If tenth-grade schooling is not sufficient, what is? How is a college reading level evidence of incompetence? How many trials must a defendant have participated in to be competent to represent himself? If a competent defendant must have represented himself in previous proceedings, how can he or she ever *first* represent himself pro se?

¶ 74. Moreover, the circuit court did not make a determination as to Rashaad Imani's competence. The majority's determination that the circuit court had made such a determination based on the above facts is speculative at best, especially considering that early in these proceedings, the circuit court evaluated Raziga Imani, Rashaad Imani's co-defendant, for Raziga Imani's competence to proceed pro se. Interestingly, after conducting the full *Klessig* colloquy and competence inquiry with Raziga Imani, the same circuit court found that he was competent to proceed pro se based on credentials similar to those of Rashaad Imani, the defendant in the case before us: (1) Raziga Imani has a high-school education, (2) he went to technical college for two semesters, (3) he was literate and spoke English, and (4) he had been involved in three non-trial court proceedings while being represented by attorneys.

---

[9] In fact, Imani's participation in five trials may constitute more trial exposure and experience than many practicing lawyers could claim, especially those lawyers who do not regularly appear in court.

¶ 75. Simply put, the circuit court here did not engage in the full and complete colloquy mandated by *Klessig*. The record does not support the circuit court's denial of Imani's request to waive counsel and to represent himself. Because of that, the circuit court committed structural error, which requires reversal.

¶ 76. Because I believe that the court of appeals erred when it determined that the proper remedy for a defective *Klessig* colloquy is a new trial, I concur with the majority's holding to the extent that it reverses the court of appeals' remand for a new trial. However, I strongly disagree with the majority's failure to order a remand for a retrospective evidentiary hearing. Instead, I would reverse the court of appeals, and remand to the circuit court for the required retrospective evidentiary hearing in accord with *Klessig*.[10]

¶ 77. For the reasons set forth, I respectfully concur in part and dissent in part.

¶ 78. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON, C.J. and Justice ANN WALSH BRADLEY join this concurrence/dissent.

---

[10] In concurrence to the majority opinion in *Klessig*, Chief Justice Abrahamson raised concerns about the difficulties involved with a retrospective determination of competency. *See Klessig*, 211 Wis. 2d at 222 (Abrahamson, C.J., concurring). Regardless of those concerns, however, I recognize, as do Chief Justice Abrahamson and Justice Bradley, that in this case we are bound by the *Klessig* precedent and the principle of stare decisis.